```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION

 3   _____
                                         )
 4   UNITED STATES OF AMERICA            )
                                         ) CRIMINAL ACTION NO.
 5   VS.                                 ) 4:22-CR-367
                                         )
 6   ISAAC AMBE NFORMANGUM               ) TIME
     _____)
 7

 8                      SUPPRESSION HEARING
            BEFORE THE HONORABLE LEE H. ROSENTHAL
 9                UNITED STATES DISTRICT JUDGE
                      OCTOBER 23, 2023
10
     APPEARANCES:
11
     FOR PLAINTIFF:
12   MR. RICHARD WESLEY BENNETT
     United States Attorney's Office
13   1000 Louisiana, Suite 2300
     Houston, Texas  77002
14   (713)567-9540

15   FOR DEFENDANT:
     MR. JONATHAN D. LANDERS
16   Attorney at Law
     917 Franklin, Suite 300
17   Houston, Texas  77002
     (713)685-5000
18
     MR. EDWARD MICHAEL CHERNOFF
19   Attorney at Law
     917 Franklin, Suite 300
20   Houston, Texas  77002
     (713)222-9141
21
     ALSO PRESENT:
22   Mr. Gregory Brown
     Ms. Yolonda Cole
23   Mr. Isaac Nformangum

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

1    APPEARANCES CONTINUED:

2    **COURT REPORTER:**
     Heather Alcaraz, CSR, FCRR, RMR
3    Official Court Reporter
     515 Rusk, Suite 8004
4    Houston, Texas  77002
     (713)250-5584

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# I N D E X

SUPPRESSION HEARING

OCTOBER 23, 2023                                                    PAGE

Closing Argument by Mr. Bennett                                      39

Closing Argument by Mr. Landers                                      41

Rebuttal Closing Argument by Mr. Bennett                            44

Ruling by the Court                                                 46

Motion by Mr. Landers                                              46

Response by Mr. Bennett                                            49

Ruling by the Court                                                50

**DEFENDANT'S WITNESS:**

**ISAAC NFORMANGUM**
Direct Examination by Mr. Chernoff.................               6
Cross-Examination by Mr. Bennett..................               16
Redirect Examination by Mr. Chernoff..............               17

**GOVERNMENT'S WITNESS:**

**GREGORY BROWN**
Direct Examination by Mr. Bennett.................               18
Cross-Examination by Mr. Landers..................               28

1                    PROCEEDINGS

13:31:49  2          **THE COURT:**  Good afternoon.  Is the defendant present?

13:31:52  3          **MR. LANDERS:**  Right here, Your Honor.

13:31:53  4          **THE COURT:**  Have him come on up.

13:32:06  5          Go ahead and state your appearances, and then you may

6      be seated.

13:32:08  7          **MR. BENNETT:**  Good afternoon, Your Honor.  Rick

8      Bennett, Ms. Yolonda Cole, along with Agent Brown.

13:32:15  9          **MR. CHERNOFF:**  Your Honor, Ed Chernoff for Isaac --

13:32:17 10          **THE COURT:**  You need to use the microphone, please.

13:32:17 11          **MR. CHERNOFF:**  Ed Chernoff for Isaac Nformangum, and,

12      also, Jonathan Landers.

13:32:21 13          **THE COURT:**  All right.  We're here on an evidentiary

14      hearing on a motion to suppress.  Go ahead.

13:32:27 15          **MR. BENNETT:**  Your Honor, the government calls Agent

16      Greg Brown.

13:32:30 17          **THE COURT:**  Do you want to go first?

13:32:32 18          **MR. LANDERS:**  Well, probably so, Judge.  And, also,

19      before we begin, if it's okay with the Court, we've got an

20      agreement on preadmitting exhibits, if that's okay with you.

13:32:39 21          **THE COURT:**  Good.  I have 12 exhibits.

13:32:42 22          **MR. BENNETT:**  And one of those, No. 6, I pulled it out

23      upon agreement of the parties.

13:32:46 24          **THE COURT:**  All right.  I see it.

13:32:48 25          All right.

13:32:49  1          **MR. LANDERS:**  And then from --

13:32:49  2          **THE COURT:**  Any objection to any of those?

13:32:51  3          **MR. LANDERS:**  No, not to theirs, Your Honor.

13:32:53  4          **THE COURT:**  All right.  They're all admitted.

13:32:54  5          **MR. LANDERS:**  And then for the defense, we've got

6      Defense Exhibit 1, which are admonishment forms, and we did file

7      an exhibit list this morning, Your Honor.

13:33:04  8          **THE COURT:**  I don't have it, I don't think.

13:33:07  9          **MR. LANDERS:**  I have a copy of it here.

13:33:08 10          **THE CASE MANAGER:**  It should be in the very front of

11     the book, but you don't have their exhibits.

13:33:12 12          **THE COURT:**  All right.  I've got it.  Thank you.  So

13     these are all admitted by agreement?

13:33:18 14          **MR. BENNETT:**  Yes, Your Honor.

13:33:19 15          **MR. LANDERS:**  One, 2, and 3.

13:33:20 16          **THE COURT:**  Got it.  Okay.

13:33:24 17          **MR. LANDERS:**  And then with that --

13:33:25 18          **MR. CHERNOFF:**  Judge, it is our burden.  So we'd like

19     to begin.

13:33:29 20          **THE COURT:**  That's fine.  Go ahead.

13:33:31 21          **MR. CHERNOFF:**  For purposes of this hearing, Judge,

22     we're going to call Isaac Nformangum to testify.

13:33:37 23          Isaac?

13:33:39 24          Stand up, raise your right and be sworn.

13:33:43 25          **THE COURT:**  Take the witness stand, yes, please.

*Mr. Chernoff Direct of Isaac Nformangum*

13:33:53  1     Raise your right hand.

13:34:00  2        *(Witness sworn.)*

13:34:00  3          **ISAAC NFORMANGUM, DULY SWORN, TESTIFIED:**

13:34:00  4                **DIRECT EXAMINATION**

13:34:07  5   **BY MR. CHERNOFF:**

13:34:08  6   **Q**   Isaac, can you hear me okay?

13:34:09  7          **THE COURT:**  This is a formal proceeding.  Please

        8   address him by his last name.

13:34:12  9          **MR. CHERNOFF:**  I will, Judge.

13:34:13 10          **THE COURT:**  Thank you.

13:34:14 11   **BY MR. CHERNOFF:**

13:34:14 12   **Q**   I'm calling you Mr. Nformangum even though I've called you

       13   Isaac our whole relationship because we're in federal court,

       14   okay?

13:34:21 15   **A**   Understood.

13:34:22 16   **Q**   Okay.  I want you to tell us your age, please.

13:34:26 17   **A**   Yes.  I am 23 years of age.

13:34:28 18   **Q**   And state your full name.

13:34:29 19   **A**   Yes.  My full name is Isaac Ambe Nformangum.

13:34:36 20   **Q**   All right.  Where do you live currently?

13:34:38 21   **A**   Yes.  I currently live in Richmond, Texas, 17607 Barton

       22   Point Lane.

13:34:43 23   **Q**   And this is with your mother; is that right?

13:34:45 24   **A**   Yes.

13:34:48 25   **Q**   Now, I want to bring your attention to June 28th of 2022.

*Mr. Chernoff Direct of Isaac Nformangum*

1   Were you living with your mother then as well?

2   **A**   Yes, I was.

3   **Q**   All right.  And you recall that date pretty well?

4   **A**   Yes.

5   **Q**   Do you recall being arrested on that day?

6   **A**   Yes.

7   **Q**   All right.  I want to discuss the circumstances of that

8   arrest, all right?

9   **A**   Yes.

10  **Q**   You were at home when you were arrested?

11  **A**   Yes, I was.

12  **Q**   All right.  And at the time that you were being arrested,

13  were you aware of what you were being arrested for?

14      Did you know why you were being arrested?

15      Okay.  Mr. Nformangum, describe the circumstances of the

16  arrest, please.

17  **A**   Yes, sir.  Yes.  It was approximately 12:00 p.m. --

18          **THE COURT:**  Sir, would you lean forward and speak more

19  closely into the mic and louder?

20          **THE WITNESS:**  Yes, Your Honor.

21          **THE COURT:**  Thank you.

22  **A**   Yes.  It was 12:00 p.m.

23      Yes.  It was 12:00 p.m., approximately, when there was

24  knock -- there was banging at the door.  I did not know who it

25  was at first.  I assume that it was someone trying to break in.

*Mr. Chernoff Direct of Isaac Nformangum*

13:36:00  1      I -- I went to my sister's room.  The window was

2   overlooking the driveway.  I looked out and saw, in fact, it was

3   the police, and so I resolved to go downstairs, go up to the

4   door, and so, you know, turn myself in to the authority.

13:36:18  5  **BY MR. CHERNOFF:**

13:36:19  6  **Q**   All right.  The -- this is 12:00 noon; is that right?

13:36:22  7  **A**   Yes.

13:36:22  8  **Q**   All right.  And you went outside after looking out the

9   window, right?

13:36:26 10  **A**   Yes.

13:36:26 11  **Q**   Okay.  Describe -- tell us what agencies were outside --

12   were -- were attempting to arrest you.

13:36:33 13  **A**   Yes.  It was the U.S. Marshals, as was later confirmed to

14   me.  It was a detachment with the Fort Bend -- the Fort Bend

15   Police Department.

13:36:46 16  **Q**   All right.  So both the federal marshals and Fort Bend

17   Sheriff's Department were there; is that right?

13:36:54 18  **A**   Yes.

13:36:54 19  **Q**   All right.  Who transported you after the arrest?

13:36:58 20  **A**   Yes.  I was -- the U.S. Marshals transported me to the

21   Fort Bend County jail.  It was approximately 12, 15 minutes away

22   from the house.

13:37:09 23  **Q**   All right.  So you rode with the U.S. Marshal; is that

24   right?

13:37:12 25  **A**   Yes.  Yes.

13:37:12 1   **Q**   All right. During that interaction with the U.S. Marshal, I

2   mean, at the time that -- that you were riding with them or

3   during the arrest, did anybody read you your Miranda rights?

13:37:23 4   **A**   No. I was not read my rights.

13:37:25 5   **Q**   You know what your Miranda rights are. You've heard of

6   those; is that right?

13:37:29 7   **A**   Yes, I know them.

13:37:29 8   **Q**   You know what they consist of. You know what the point of

9   those are; is that right?

13:37:33 10   **A**   Yes. Uh-huh.

13:37:34 11   **Q**   All right. Did you have any conversation with the federal

12   marshal that was transporting you to the jail?

13:37:45 13   **A**   Yes, I did.

13:37:47 14   **Q**   All right. Do you recall the conversation?

13:37:49 15   **A**   Yes, I recall. I was -- yes. The marshal in question,

16   Officer Jones specifically, he asked me if I -- he asked me if I

17   knew what the call was about. They said they had received a

18   call from Harris County. I [sic] was asking, "Do you know of

19   this?" I answered, "Yes, I do."

13:38:10 20   **Q**   All right. Any other conversation?

13:38:15 21     Let me ask you this question specifically: Did he mention

22   anything about making a statement or being interrogated?

13:38:26 23   **A**   Yes.

13:38:26 24   **Q**   All right. What -- what -- tell us about that conversation.

13:38:30 25   **A**   Yes. Officer Joey, I was in the car with him on the ride to

*Mr. Chernoff Direct of Isaac Nformangum*

1    the county jail.  I was informed that, again, that I was to be

2    taken to Harris County, wherein I was to be interrogated

3    and -- and -- well, yes, Officer Joey clarified that, you know,

4    the -- whatever happens after that, will happen, and that was

5    the end of the conversation.

13:38:55  6    Q    All right.  Now, during this conversation, did -- did --

7    would -- were you ever read your rights?

13:39:02  8    A    No, I was not.

13:39:02  9    Q    And when I say "rights," I'm referring to Miranda rights,

10    right, the right to --

13:39:07  11    A    Yes.

13:39:07  12    Q    The right to remain silent; right to attorney; that kind of

13    thing --

13:39:10  14    A    Uh-huh.

13:39:10  15    Q    -- right?

13:39:11  16        All right.  Now, you were not brought to Harris County.

17    You were brought to Fort Bend County jail; is that right?

13:39:19  18    A    Yes, I was.

13:39:20  19    Q    And this is on the 28th of June; is that right?

13:39:22  20    A    Yes.

13:39:23  21    Q    All right.  When was the first time that you -- well, at

22    some point you were brought before a magistrate; is that right?

13:39:37  23    A    Yes.

13:39:37  24    Q    Now, for purposes of those who don't know how that works in

25    the Fort Bend jail, could you describe that process?

*Mr. Chernoff Direct of Isaac Nformangum*

13:39:44   1   **A**   Yes.  It was the next day, on Wednesday, that -- sometime in

2   the morning around 11:00 or 12:00 p.m.

13:39:56   3   **Q**   So to be clear, you were arrested at noon on June 28th?

13:39:59   4   **A**   Yes.

13:39:59   5   **Q**   And you saw -- no police officer came to interrogate you or

6   asked you questions at all until -- at least until the 29th at

7   11:00 a.m.; is that right?

13:40:12   8   **A**   Yes.

13:40:13   9   **Q**   All right.  You sat in the jail?

13:40:15  10   **A**   Yes.

13:40:15  11   **Q**   And nobody spoke to you?

13:40:17  12   **A**   No.

13:40:17  13   **Q**   And nobody read you your rights?

13:40:19  14   **A**   No.

13:40:20  15   **Q**   So at 11:00 a.m. on the 29th, describe the process.

13:40:24  16   **A**   Yes.  I was alongside 20 other inmates brought before a

17   magistrate judge.  There was a miniature courtroom inside of

18   the -- the jail itself that we were brought to.  All of us

19   inmates were handcuffed from the front.  We had -- we were

20   shackled around the waist.

13:40:45  21       We were brought inside of the courtroom.  We were -- yes.

22   We were brought inside the courtroom.  We were sat in the back

23   of the courtroom.

13:40:57  24       Sometime after we were sat down in the back, we were called

25   to the front to -- we were called to the front of the courthouse

1   to stand before one of the bailiffs inside, and we were asked as

2   to whether or not we would hire an attorney or we would like a

3   court-appointed attorney.

13:41:20  4       In my case, I requested a court-appointed attorney.  I sat

5   back down in the back of the courthouse, and a short while after

6   that, I was again called to the front by another of the bailiffs

7   who had in their hand an iPad -- an electronic pad, which I was

8   told to sign with the understanding, as told to me by the

9   bailiff, that the -- the form would work to -- would work to --

10  you know, the form would work to make sure that I was eligible

11  to receive a court-appointed attorney.

13:41:57  12  Q    All right.  And so do you recall, prior to signing this

13  form, the magistrate reading you the rights that are on this

14  form?

13:42:05  15  A    No.  I was not read the rights by the magistrate, no.

13:42:09  16  Q    So the first time you saw these rights, were given to you by

17  the deputy; is that correct?

13:42:13  18  A    By one of the bailiffs in the courthouse -- the courtroom,

19  yes.

13:42:18  20       MR. CHERNOFF:  May I approach the witness, Judge, to

21  show him this exhibit?

13:42:22  22       THE COURT:  You need not ask permission to approach

23  the witness.

13:42:24  24       MR. CHERNOFF:  Okay.  Thank you.

13:42:25  25       MR. LANDERS:  No one needs to.

*Mr. Chernoff Direct of Isaac Nformangum*

BY MR. CHERNOFF:

Q   I want to show you -- this is Defense Exhibit 1 that I've just shown you, Mr. Nformangum, right?

     Do you recall, is this the form that you saw on that iPad at the time that you -- that you signed it?

A   Yes.  That was the form.

Q   And the rights that were -- I -- did you read that iPad before you signed it?

A   Yes.  I read the -- I read the form twice.

Q   All right.  And all of those rights you realized that you -- or at the time, you read all of those rights prior to signing that iPad; is that right?

A   Yes, that is correct.

Q   At the time you signed this iPad, did you think you were asserting your Miranda rights?

          THE COURT:  I'm sorry.  Say that again?

BY MR. CHERNOFF:

Q   At the time that you signed this iPad, did you think you were asserting your Miranda rights?

A   Yes.  Including my right to an attorney, yes.

Q   All right.  And all of those rights?

A   Yes.

Q   And this is on the 29th at 11:00 a.m.; is that right?

A   Yes.

Q   And still by this time, you had not been approached by a law

1    enforcement officer to interview you; is that right?

13:43:42  2    **A**    No.

13:43:42  3    **Q**    When was the first time that a law enforcement officer came

4    to interview you?

13:43:47  5    **A**    Yes.  It was the day after the arraignment hearing on

6    Wednesday.  It was Thursday.

13:43:53  7    **Q**    All right.  So this is the 30th now; is that right?

13:43:56  8    **A**    Yes.

13:43:57  9    **Q**    All right.  And the individuals that came to interview you,

10    were they both state and federal agents?

13:44:06  11    **A**    Yes.

13:44:06  12    **Q**    Do you recall the names of these people?

13:44:11  13    **A**    Yes.  Special Agent Gregory R. Brown with the FBI, and

14    Detective Brownson with the Fort Bend County Sheriff's Office

15    who worked investigations.

13:44:20  16    **Q**    Okay.  Were you surprised -- in light of the fact that you

17    signed these Miranda rights, were you surprised to see these

18    officers?

13:44:27  19    **A**    Yes.

13:44:27  20    **Q**    And they talked to you.  They spoke to you for a brief

21    period of time before they read you rights again; is that right?

13:44:33  22    **A**    Yes.

13:44:34  23    **Q**    All right.  And then you answered their questions; is that

24    correct?

13:44:37  25    **A**    Yes.

*Mr. Chernoff Direct of Isaac Nformangum*

13:44:37 1    **THE COURT:**  Can I interrupt and ask a question here?

13:44:44 2    **MR. CHERNOFF:**  Yes, Judge.  Thank you.

13:44:45 3    **THE COURT:**  Had you asked questions asking for the

4    details of the reason you were arrested before you were read

5    these rights?

13:44:55 6    **MR. CHERNOFF:**  Judge, can you ask that question

7    differently for him, please?

13:44:59 8    **THE COURT:**  All right.

13:45:00 9    Before you were read these rights, had you given any

10    detailed statement to any law enforcement officer or judge?

13:45:11 11    **THE WITNESS:**  No, I did not.

13:45:12 12    **THE COURT:**  Was the first time you gave your statement

13    after you had been read these rights?

13:45:19 14    **THE WITNESS:**  Yes, that is correct.

13:45:20 15    **THE COURT:**  Thank you.

13:45:22 16    **BY MR. CHERNOFF:**

13:45:22 17    **Q**   During the -- the --

13:45:23 18    **MR. CHERNOFF:**  May I, Judge?

13:45:25 19    **THE COURT:**  Yes, please.

13:45:25 20    **BY MR. CHERNOFF:**

13:45:26 21    **Q**   During the interview, the interrogation at this time, did

22    you also provide them your cell phone, or did they have your

23    cell phone?

13:45:35 24    **A**   Yes.  They had my cell phone because I had given it to the

25    police.

*Mr. Bennett Cross of Isaac Nformangum*

13:45:38 1 Q    All right.  And they asked for your password; is that right?

13:45:41 2 A    Yes.

13:45:41 3 Q    Did you provide them the password?

13:45:43 4 A    Yes.

13:45:43 5 Q    Was it the correct password?

13:45:45 6 A    Yes.

13:45:48 7 Q    All right.

13:45:53 8         MR. CHERNOFF:  That's all I have, Judge.

13:45:54 9         THE COURT:  All right.  Go ahead, Mr. Bennett.

13:46:00 10        MR. BENNETT:  Just one question.

13:46:01 11                    CROSS-EXAMINATION

13:46:02 12 BY MR. BENNETT:

13:46:02 13 Q    Good afternoon, Mr. -- is it Nformangum?

13:46:04 14 A    Yes.

13:46:05 15 Q    Okay.  My name's Rick Bennett.  I don't think you and I have

16 met before, but I'm the prosecutor on this case.

13:46:09 17      And following up on the -- you know, the judge just asked

18 you a question, and you stated that nobody had questioned you

19 about the details of this case until Agent Brown came and talked

20 to you; isn't that correct?

13:46:25 21 A    Yes, that is correct.

13:46:26 22 Q    Okay.  And he read you your rights?

13:46:29 23 A    Yes.

13:46:30 24 Q    And it was all recorded on video.  Are you aware of that?

13:46:34 25 A    Yes, I was aware.

*Mr. Chernoff Redirect of Isaac Nformangum*

13:46:35  1    Q   And you waived your rights, and you spoke to the officer?

13:46:37  2    A   Yes, I did.

13:46:41  3              MR. BENNETT:  No further questions, Your Honor.

13:46:42  4              MR. CHERNOFF:  Judge, I have one more question,

          5    please.

13:46:45  6              THE COURT:  Of course.  Go ahead.

13:46:45  7                        REDIRECT EXAMINATION

13:46:46  8    BY MR. CHERNOFF:

13:46:53  9    Q   Prior to the visit on June 30th by the federal agent and the

         10    state deputy, had you made a request to see any of these

         11    individuals?

13:47:04 12    A   No.  I did not make a request to see any one officer for the

         13    purpose of interrogation or otherwise.

13:47:11 14    Q   All right.  Thank you.

13:47:12 15              MR. CHERNOFF:  That's all I have.

13:47:14 16              THE COURT:  Anything further of this witness?

13:47:16 17              MR. BENNETT:  No, Your Honor.

13:47:16 18              THE COURT:  You may step down, sir.  Thank you.

13:47:25 19              MR. LANDERS:  Judge, next we call Special Agent Brown.

13:47:27 20              THE COURT:  All right.  Agent Brown.

13:47:32 21              MR. BENNETT:  May I inquire, Your Honor:  Did you

         22    issue Agent Brown a subpoena?

13:47:36 23              MR. LANDERS:  No.

13:47:37 24              MR. BENNETT:  Okay.  Well, there are certain

         25    regulations that I'll -- I can question him, but there's no

*Mr. Bennett Direct of Gregory Brown*

1    regulations that have been done in this case, Your Honor.  So I

2    would ask that unless that's complied with, they can -- I can

3    call him, and they can cross him.

13:47:50  4    **THE COURT:**  So is that what you want me to do?

13:47:52  5    **MR. BENNETT:**  Yes, Your Honor.

13:47:53  6    **THE COURT:**  Do you want to take him out of order?

13:47:55  7    **MR. BENNETT:**  That's fine with me, Your Honor.

13:47:56  8    **THE COURT:**  All right.

13:47:57  9    **MR. LANDERS:**  No objection.

13:48:00  10    **THE COURT:**  Raise your right hand, please.

13:48:10  11    *(Witness sworn.)*

13:48:12  12    **THE COURT:**  Please take the witness stand.  And it

13    would be helpful if you, as well, would lean forward and speak

14    directly into the mic.

13:48:20  15    Go ahead.

13:48:21  16    **MR. BENNETT:**  Thank you Your Honor.

13:48:21  17    **GREGORY BROWN, DULY SWORN, TESTIFIED:**

13:48:21  18    **DIRECT EXAMINATION**

13:48:22  19    BY MR. BENNETT:

13:48:22  20    Q    Sir, would you please state your full name for the record?

13:48:25  21    A    Gregory R. Brown.

13:48:26  22    Q    Sir, how are you employed?

13:48:28  23    A    I'm an FBI agent.

13:48:30  24    Q    How long have you been an FBI agent?

13:48:32  25    A    Twenty years.

### *Mr. Bennett Direct of Gregory Brown*

13:48:33 1   **Q**   What are your duties as an FBI agent?

13:48:38 2   **A**   I conduct investigations and gather evidence for matters

3   that are of interest to the United States.

13:48:43 4   **Q**   And, briefly, do you have an educational background

5   description?

13:48:49 6   **A**   Yeah.  I have a bachelor's degree in business

7   administration.

13:48:53 8   **Q**   Okay.  Are you familiar with the case involving

9   Mr. Nformangum?

13:48:56 10   **A**   Yes, I am.

13:48:57 11   **Q**   And how did you get involved?

13:49:00 12   **A**   I was assigned this case by my supervisor.

13:49:03 13   **Q**   And what were you -- I mean, what happened in this case?

14   What were you told?

13:49:08 15   **A**   I was told that there was a -- a threat left to Senator Cruz

16   on his voicemail that had occurred on Sunday, June 26th.

13:49:22 17   **Q**   And when did you -- I guess, when were you told that?

13:49:24 18   **A**   I was told that on Tuesday, June the 28th.

13:49:29 19   **Q**   Have you reviewed documents and spoken to other officers in

20   this investigation?

13:49:33 21   **A**   Yes, I have.

13:49:34 22   **Q**   And where -- who received the threat?

13:49:37 23   **A**   It was a staff member of Senator Cruz.

13:49:40 24   **Q**   Which office?

13:49:41 25   **A**   In Houston, Texas.

*Mr. Bennett Direct of Gregory Brown*

13:49:42 1  Q   Is that the Southern District of Texas?

13:49:44 2  A   Yes, it is.

13:49:45 3  Q   So you said the threat came in on June 26th.  What day of

4  the week was that?

13:49:49 5  A   That was a Sunday.

13:49:49 6  Q   So was there -- was it left on a voicemail?

13:49:52 7  A   Yes, it was.

13:49:53 8  Q   And do you recall when the threat was actually recorded?

13:49:57 9  A   I do.  12:23 p.m.

13:50:00 10  Q   On what day?

13:50:02 11  A   Sunday.

13:50:04 12  Q   What day was the threat actually found by --

13:50:06 13  A   Oh, I apologize.  It was found the following morning,

14  Monday, June the 27th.

13:50:16 15  Q   Now --

13:50:18 16       MR. BENNETT:  May I approach the witness?

13:50:18 17       THE COURT:  Yes.  You need not ask permission to

18  approach the witness.

13:50:21 19  BY MR. BENNETT:

13:50:21 20  Q   And I'm handing you an exhibit binder with the government's

21  exhibits.

13:50:24 22   Are you aware what the threat said?

13:50:28 23  A   Yes, I am.

13:50:29 24  Q   And if you turn to Exhibit 1, is that a transcription of the

25  threat?

13:50:36 1    A    Yes.

13:50:36 2    Q    And can you give the Court just a brief summary of what the

3    threat said?

13:50:44 4    A    Starts out:  (Reading) Hello.  Good afternoon, Senator

5    Rafael.

13:50:47 6        The caller says that he just read the Texas Republican

7    Party's platform for the current year, 2022, where the intention

8    from the party was to appeal the Voter Rights Act.  And from

9    there, it says that: (Reading) Every Republican that signed off

10   on this should be found and killed, be it by bullet to the face

11   or by the smashing of a brick in your skull.  It's the civic

12   duty of every American to see to it that every one of your

13   colleagues are killed.

13:51:30 14      It goes on to say:  (Reading) Be it by finding you in a

15   public space or by trailing you to your very public home, the

16   addresses of which are public knowledge -- and there's some more

17   discussion of being human.

13:51:47 18   Q    What does the next sentence say?

13:51:49 19   A    (Reading) You and every one of your colleagues is to be shot

20   dead, found and killed.

13:51:55 21   Q    Okay.  And it continues on?

13:51:57 22   A    Yes.

13:51:57 23   Q    All right.  And who was that threat initially reported to?

13:52:04 24   A    Well, when Senator Cruz's staff member retrieved the message

25   on Monday the 27th of June of 2022, she reported it to the

*Mr. Bennett Direct of Gregory Brown*

1  senator's special operations advisor in Houston.

13:52:19  2  Q   Okay.  And then what did that special operations advisor do?

13:52:22  3  A   He forwarded it to the United States Capitol Police in

4  Washington, D.C.

13:52:26  5  Q   And what did capitol police do?

13:52:28  6  A   They do a threat assessment.  They try to determine any

7  validity to -- to the threat, who made the threat, where it's

8  located.  Basically, they look at law enforcement databases,

9  things like that -- Open Source.

13:52:45  10  Q   What type of information did they have -- the capitol police

11  have related to the threatening voicemail?

13:52:52  12  A   Well, first off, the call itself had a caller ID that said

13  Cath Nformangum.  So they had that.  They had the phone number.

14  Then they determined that the user of that number was the

15  defendant.

13:53:12  16  Q   And was that through running that phone number and name

17  through the various databases?

13:53:18  18  A   It did.

13:53:18  19  Q   Okay.  And did they take any other steps once they had that

20  name?

13:53:23  21     Once they had the defendant's name, what other steps did

22  they take?

13:53:26  23  A   Once they had his name, they determined, you know, where he

24  lived, and it turns out it was in the -- you know, the general

25  area of where the senator resides.  And so they forwarded --

*Mr. Bennett Direct of Gregory Brown*

1  forwarded all their findings to the Fort Bend County Sheriff's

2  Office because the defendant lived in that area.

13:53:46 3  Q   And when -- did the Fort Bend County Sheriff's Office

4  further the investigation?

13:53:51 5  A   Yeah.  On that Monday, the 27th of -- they did -- did quite

6  a bit more, to include surveillance at the house.

13:54:01 7  Q   Did they look at his social media?

13:54:03 8  A   Looked at social media; found -- found a Facebook.  They

9  found an Instagram; found a YouTube channel.

13:54:12 10  Q   And what did they do with that when they found that YouTube

11  channel?

13:54:17 12  A   Well, on the YouTube channel, one of the videos just, you

13  know, the -- showed an individual playing a video game.

13:54:26 14        MR. LANDERS:  Judge, we object to relevance on this,

15  just to speed things along, if it helps.

13:54:30 16        MR. BENNETT:  Okay.  I'll move along, Judge.

13:54:32 17        THE COURT:  Thank you.

13:54:32 18  BY MR. BENNETT:

13:54:33 19  Q   All right.  So at some point a -- a state criminal complaint

20  was filed; is that right?

13:54:39 21  A   Yes, that's right.

13:54:41 22  Q   What was it filed for?

13:54:43 23  A   Terroristic threat.

13:54:45 24  Q   And which county filed that charge?

13:54:47 25  A   Harris County.

## *Mr. Bennett Direct of Gregory Brown*

13:54:49  1    Q    And if you turn to Exhibit 7, is that a copy of the

2    complaint -- state complaint?

13:54:57  3    A    Yes, it is.

13:54:57  4    Q    And that was filed on what day?

13:55:03  5         On the first page of the complaint, it says "Stamped Copy."

13:55:07  6         Was it filed on June 28th?

13:55:08  7    A    June 28th, yes.  I'm sorry.

13:55:10  8    Q    Okay.  And when was Mr. Nformangum arrested?

13:55:14  9    A    He was arrested on the morning of June 28th, 2022.

13:55:30 10    Q    Okay.  And arrested on the state complaint, correct?

13:55:33 11    A    Correct.

13:55:38 12    Q    So at the time he was arrested, do you know where he was

13    taken?

13:55:44 14         Where was he taken?

13:55:45 15    A    Oh, he was arrested at his home, and he was taken to the

16    Fort Bend County jail.

13:55:47 17    Q    And who took -- performed the arrest?

13:55:51 18    A    It was a Task Force Officer Roger Williams [sic] with the

19    Fort Bend County Sheriff's Office.

13:55:56 20    Q    Did you speak to Mr. Williams -- or Officer Williams?

13:55:59 21    A    I did.

13:56:00 22    Q    And did he indicate whether he read the defendant his rights

23    or interrogated him?

13:56:05 24    A    I asked him, and he said he did not.  He said his job was to

25    arrest and take to the closest jail.

## *Mr. Bennett Direct of Gregory Brown*

13:56:12  1  **Q**   Okay.  And how did you find out where Mr. Nformangum was

2  being held?

13:56:20  3  **A**   Officer Williamson told me he was at the Fort Bend County

4  jail and that he would be there for up to 10 days or until

5  Harris County came down and got him.

13:56:29  6  **Q**   And at this point, there's no federal charges; is that

7  right?

13:56:31  8  **A**   Correct.

13:56:32  9  **Q**   And so what was your role in this investigation?

13:56:36 10  **A**   Well, to look at any federal violations, which -- which

11  there were some federal violations that appeared.  And so --

13:56:44 12  **Q**   Okay.  Were you coordinating or directing the state and

13  telling them what to do?

13:56:48 14  **A**   No.

13:56:49 15  **Q**   Okay.  Were you acting on their behalf at all?

13:56:51 16  **A**   No.

13:56:53 17  **Q**   And did you visit him, Mr. Nformangum, on June 30th?

13:56:57 18  **A**   I did.

13:56:58 19  **Q**   And had you -- had you talked to him or seen him before?

13:57:01 20  **A**   No.

13:57:03 21  **Q**   What about Detective Brownson?  Had he, to your knowledge --

22  have you spoken with him?

13:57:08 23  **A**   I did.  I met him that morning for the first time ever.  He

24  had -- he indicated he had never talked to the defendant.  He

25  showed me into the jail, where we needed to go, and arranged for

*Mr. Bennett Direct of Gregory Brown*

1  the defendant to come to the interview room.

2  **Q**   And to your knowledge, had anyone in Fort Bend County

3  interrogated Mr. Nformangum before you spoke with him?

4  **A**   No.

5  **Q**   And do you see him in the courtroom today?

6  **A**   Yes, I do.

7  **Q**   Will you describe where he's seated and what he's wearing?

8  **A**   He's seated with his attorneys.  He's wearing a light blue

9  dress shirt.

10        **MR. BENNETT:**  Your Honor, let the record reflect the

11  witness has identified the defendant.

12        **THE COURT:**  The record will so reflect.  Thank you.

13  **BY MR. BENNETT:**

14  **Q**   And so you proceeded to read him his Miranda rights?

15  **A**   I did.

16  **Q**   Was this on video?

17  **A**   Yes.

18  **Q**   And is it -- a transcript of this on -- contained in Exhibit

19  No. 2?

20  **A**   Yes.  Or portions, I believe.

21        Or is this -- yeah.  It's here.

22  **Q**   Did you take your time, you know, reading him these rights?

23  **A**   Yes.  I actually went a little slower than I normally do,

24  line by line; made sure the defendant had a copy to read along.

25  **Q**   Okay.  And did he agree to waive his rights to speak to you?

*Mr. Bennett Direct of Gregory Brown*

13:58:28  1  A    Yes, he did.

13:58:29  2  Q    And did you also ask him for consent to search his phone?

13:58:32  3  A    Yes.

13:58:33  4  Q    And did he give that to you?

13:58:34  5  A    He did.

13:58:35  6  Q    Did he -- was it a -- a written consent?

13:58:39  7  A    Written consent, yes.

13:58:40  8  Q    Is that found at Exhibit No. 10?

13:58:49  9  A    Yes, it is.

13:58:50 10  Q    And it looks like there is a -- I guess, that diagram, who

         11  drew that diagram?

13:58:57 12  A    The dots were put there by Detective Brownson, and the

         13  numbers and the lines connecting were written by the defendant.

13:59:08 14  Q    Okay.  And he voluntarily signed this consent to search?

13:59:12 15  A    Yes.

13:59:12 16  Q    And there's also Exhibit No. 8.  There's an advice of rights

         17  form.

13:59:16 18       Is that the rights advisals you gave him?

13:59:21 19  A    Yes.

13:59:22 20  Q    And he -- and that's his signature there at the bottom?

13:59:27 21  A    Yes, it is.

13:59:28 22  Q    When you were reading him these rights, did he ever tell

         23  you, "Stop.  I want a lawyer"?

13:59:33 24  A    No.

13:59:33 25  Q    Did he ever invoke his right to remain silent?

*Mr. Landers Cross of Greg Brown*

13:59:37 1   **A**   No.

13:59:42 2   **Q**   And after this interview, did you speak to him again or

3   interrogate him again?

13:59:47 4   **A**   No.

13:59:47 5   **Q**   Okay.

13:59:48 6          **MR. BENNETT:**  Pass the witness, Your Honor.

13:59:49 7                    **CROSS-EXAMINATION**

13:59:54 8   **BY MR. LANDERS:**

13:59:59 9   **Q**   Special Agent Brown, nice to see you again.

14:00:01 10  **A**   Yes, sir.

14:00:01 11  **Q**   I'm Jonathan Landers.

14:00:05 12          What area do you work out of?  Is it Houston, Texas?

14:00:08 13  **A**   I'm in the Texas City resident agency.

14:00:10 14  **Q**   Okay.  So you're local here to the Houston area?

14:00:13 15  **A**   Yes.

14:00:13 16  **Q**   Okay.  I don't want to get into detail here, but does the

17  FBI have any procedures related to interviewing suspects?

14:00:23 18  **A**   We do.

14:00:23 19  **Q**   Okay.  Is there anything about a timeline, when it's best to

20  interview a suspect that's just been arrested?

14:00:35 21          **THE COURT:**  Do you mean what time of day?

14:00:37 22  **A**   Not necessarily.

14:00:37 23          **THE COURT:**  I'm sorry.  Do you mean what time of day,

24  or how long after the arrest?

14:00:41 25  **BY MR. LANDERS:**

*Mr. Landers Cross of Greg Brown*

14:00:42 1  Q   No.  How long do you usually wait, is what I'm getting at,

2  to interview a suspect?

14:00:45 3  A   If feasible, sooner is better.

14:00:46 4  Q   Okay.  So generally speaking, an FBI agent is trained to try

5  to interview somebody as soon after they're arrested as

6  possible?

14:00:55 7  A   Ideally.

14:00:56 8  Q   Okay.  Is part of the reason, that the FBI would want to

9  interview a suspect prior to them hiring a lawyer or being given

10  a lawyer?

14:01:06 11  A   I would say so, yes.

14:01:08 12  Q   Okay.  And how long have you been an agent, again?

14:01:11 13  A   Twenty years.

14:01:12 14  Q   Generally speaking, on your cases, do you interview a

15  suspect who's been arrested prior to going to court the first

16  time?

14:01:22 17  A   Generally, yes.  If I'm involved in the arrest --

14:01:25 18  Q   Okay.

14:01:25 19  A   -- especially.

14:01:27 20  Q   And then how did you become involved in this case?

14:01:34 21  A   I was notified by my supervisor that this case was coming.

22  I was told about it.  I called the U.S. Attorney's Office to get

23  an AUSA assigned to get its direction, and then at that point I

24  was really playing catch-up.

14:01:59 25  Q   Okay.

*Mr. Landers Cross of Greg Brown*

14:01:59  1  **A**   So I was trying to get a briefing on what happened, what

2  evidence had been collected, where is the defendant, is there

3  any evidence, that sort of thing.  Just basic --

14:02:12  4  **Q**   Okay.

14:02:12  5  **A**   -- stuff just trying to get an idea of where we're at.

14:02:16  6  **Q**   And just to get the timeline again, June 26, 2022, midday is

7  the phone call?

14:02:24  8  **A**   That's right.

14:02:24  9  **Q**   That's a Sunday?

14:02:25 10  **A**   Yep.

14:02:28 11  **Q**   Monday, which is the -- June 27th, were you involved in the

12  case on Monday, June 27th?

14:02:33 13  **A**   No, I didn't know about it.

14:02:35 14  **Q**   But you're aware that Fort Bend County, I think, was working

15  on gathering some evidence on that day?

14:02:40 16  **A**   No.

14:02:41 17  **Q**   Okay.  You don't know if they were or they were not?

14:02:44 18  **A**   I first learned about this in -- around noon on June 28th,

19  which was a Tuesday.

14:02:53 20  **Q**   Okay.  And then were you aware -- I believe the arrest took

21  place on June 28th.

14:03:03 22  **A**   I now know it did take place earlier that morning, yes.

14:03:06 23  **Q**   Okay.  Were you aware that Mr. Nformangum had been arrested

24  on June 28th?  I'm talking about on June 28th, were you aware?

14:03:18 25  **A**   I may have been aware at that time, or I may have found out

*Mr. Landers Cross of Greg Brown*

1  the following day.

14:03:23  2  Q   Okay.  Is there -- okay.  On June 28th and June 29th, were

3  you in conversation with the state authorities?

14:03:36  4  A   Yes.  I spoke to the arresting task force officer,

5  Williamson, and then I talked to Detective Brownson.

14:03:48  6  Q   And was that on June 28th?

14:03:57  7  A   If I can refer to my note?

14:03:58  8  Q   Sure.

14:04:05  9  A   Yes, it was.

14:04:05  10  Q   Okay.  What was the reason that the interview of

11  Mr. Nformangum didn't take place until June 30th?

14:04:21  12  A   I wasn't sure that we were going to have federal charges or

13  not.  It was -- we -- it was an assessment.  It wasn't even an

14  open investigation.  It was just a gather some initial facts;

15  see what's going on; see if this is going to be a federal case,

16  yes or no.  If the answer's no, then there's no point in taking

17  any further steps.

14:04:41  18  Q   Okay.

14:04:41  19  A   So really, from the 28th and 29th, I was gathering

20  information; getting a copy of what's been done; you know,

21  talking with my assistant U.S. attorney; figuring out next

22  steps; that sort of thing.

14:04:58  23  Q   Okay.  So is it fair to say two days later, June 30th, the

24  decision has -- had been made to potentially pursue the federal

25  case, and that's when you decided to interview Mr. Nformangum?

14:05:08  1   **A**   Yes.  That morning on June 30th.

14:05:10  2   **Q**   Okay.  And you weren't really aware of what had been going

3   on with him, Mr. Nformangum, the prior two days?

14:05:17  4   **A**   I knew, in my mind, it was a little bit unusual for me,

5   being that I usually do federal arrests -- our jurisdiction's

6   the United States, you know.  If we arrest them in -- wherever,

7   and we take them to the courthouse in Houston.

14:05:35  8       I was not aware exactly of the state procedures until it

9   was explained to me, Oh, he's in Fort Bend, but it's a

10   Harris County charge.  He's got to be basically, like,

11   extradited.  They take ten days.  You know, they come down

12   whenever they can to get him, and that's all I knew.

14:05:55 13   **Q**   Okay.  The June 30th, 2022, interview with Mr. Nformangum,

14   that was the first interview that took place with law

15   enforcement?

14:06:06 16   **A**   Yes.

14:06:06 17   **Q**   Okay.  And it was actually done in the Fort Bend County

18   jail?

14:06:12 19   **A**   Correct.

14:06:14 20   **Q**   Clearly, Mr. Nformangum was not free to leave at that point.

21   Do you agree with that?

14:06:18 22   **A**   That's right.

14:06:19 23   **Q**   Okay.  Like you said, he had to actually be brought to

24   Harris County prior to being free to leave, is your

25   understanding?

*Mr. Landers Cross of Greg Brown*

14:06:25 1   A   I would think, yes.

14:06:27 2   Q   Okay.

14:06:27 3   A   Uh-huh.

14:06:29 4   Q   Whenever you went to interview Mr. Nformangum, you had --

5   did you have his cell phone with you?

14:06:34 6   A   No, I did not.

14:06:35 7   Q   Okay.  Did the sheriff that was with you have it?

14:06:40 8   A   They had it, I believe, in his property at the jail.

14:06:43 9   Q   Okay.  And that was Sheriff Brownson; is that right?

14:06:49 10   A   He -- he didn't have it.  It would have been the

11   arresting --

14:06:55 12   Q   That was a bad question.  I apologize.

14:06:58 13        The sheriff that was with you in the interview was a

14   Fort Bend County sheriff named Brownson?

14:07:03 15   A   Correct.

14:07:03 16   Q   Okay.  But the phone, which was later searched, had already

17   been seized by the sheriffs [sic]?

14:07:16 18   A   Not by any legal process.  I think it was -- perhaps he had

19   the phone on him at the time of his arrest.  So his belt, his

20   watch, his wallet, his phone would have been in property, you

21   know, for safekeeping.

14:07:27 22   Q   Okay.  I just want to make sure we're clear.  It was

23   actually Mr. Nformangum's phone --

14:07:31 24   A   Oh --

14:07:31 25   Q   -- that was later searched?

*Mr. Landers Cross of Greg Brown*

14:07:32 1    A    -- yes.  Yes.

14:07:33 2    Q    Okay.

14:07:34 3    A    Yeah.

14:07:34 4    Q    And during this June 30th, 2022, interview, the password to

5    the phone was given to you by Mr. Nformangum?

14:07:42 6    A    Yes, it was.

14:07:43 7    Q    Okay.

14:07:43 8         Were you aware that Mr. Nformangum had been taken before a

9    magistrate prior to your interview with him?

14:07:57 10   A    I was not --

14:07:58 11   Q    Okay.

14:07:58 12   A    -- aware.

14:08:00 13   Q    Have you ever -- it doesn't sound like it, but have you ever

14   worked on Texas state-level cases?

14:08:05 15   A    Not very often.

14:08:06 16   Q    Okay.  Are you aware of any laws in Texas that when a

17   person -- well, first off, that a person has to be taken before

18   a magistrate within 48 hours of their arrest?

14:08:19 19   A    It seems reasonable, but I would not have been able to tell

20   you that.

14:08:22 21   Q    Are you aware that a magistrate in Texas is required to read

22   Miranda rights to a defendant?

14:08:30 23   A    That's a fair assumption, yes.

14:08:32 24   Q    Okay.  Have you -- have you reviewed Defense Exhibit 1 prior

25   to today?

## *Mr. Landers Cross of Greg Brown*

14:08:49 1  **A**  (Witness reviews document.)

14:08:52 2  **Q**  Just 1.

14:08:52 3  **A**  Exhibit 1, yes, I have.

14:08:53 4  **Q**  Okay.  And do you agree Defense Exhibit 1 is some sort of

5  form that was signed by Mr. Nformangum when he visited with the

6  magistrate?

14:09:02 7  **A**  Yes.

14:09:03 8  **Q**  Okay.  And I think up in the first -- I think there's a 1 on

9  the top of that form -- or there's at least a list of rights

10  which are, essentially, Miranda rights.  Do you agree with that?

14:09:15 11  **A**  Agreed.

14:09:15 12  **Q**  Do you agree that they also mirror the Miranda rights in

13  Defense Exhibit 2?  Do you agree with that?

14:09:23 14  **A**  Yes.

14:09:23 15  **Q**  And what is Defense Exhibit 2?

14:09:25 16  **A**  This is an FBI advice of rights form.

14:09:29 17  **Q**  Okay.  And that's the form that you used prior to your

18  interview with Isaac?

14:09:35 19  **A**  Correct.

14:09:35 20  **Q**  Okay.  Were you aware, whenever you interviewed Isaac on

21  June 30th, that on June 28th he had asked for a lawyer?

14:09:47 22  **A**  I was not aware of that.

14:09:48 23  **Q**  Okay.  If you had known that he was read his Miranda rights

24  by a magistrate and requested a lawyer, would you have initiated

25  this interview?

*Mr. Landers Cross of Greg Brown*

14:09:59 1   **A**   Possibly.  I would have discussed that with the federal AUSA

2   beforehand.

14:10:13 3   **Q**   Did Mr. Nformangum initiate this interview, the one on

4   June 30th?

14:10:18 5   **A**   No.

14:10:22 6   **Q**   I believe you said, when you read Defense Exhibit 2 with

7   Isaac -- I'm sorry, Mr. Nformangum, that you went over it

8   slowly; is that correct?

14:10:33 9   **A**   I did.

14:10:34 10   **Q**   Why was that?

14:10:35 11   **A**   Based on his age.  I have two sons that are close to his

12   age, and I wanted to make sure that he understood everything

13   correctly.

14:10:47 14   **Q**   I know you didn't ask Mr. Nformangum questions prior to

15   getting into the interview room about the case, okay, but did

16   you talk with him some on the way down to the interview room?

14:10:57 17   **A**   No, I did not.

14:10:58 18   **Q**   During the interview, did you develop concerns that there

19   might be, for lack of a better term, mental health issues or

20   some sort of diagnoses that might be present with

21   Mr. Nformangum?

14:11:13 22       **MR. BENNETT:**  I'm going to object to the relevance of

23   this, Your Honor.

14:11:16 24       **THE COURT:**  I'll sustain the objection.

14:11:18 25   **BY MR. LANDERS:**

## *Mr. Landers Cross of Greg Brown*

14:11:19  1   **Q**   Would you flip to -- I think it's Government's Exhibit 2.

14:11:23  2       And I'll take that other exhibit so you don't lose them.

14:11:26  3   **A**   Okay.

14:11:36  4   **Q**   That's not the complete transcription of the interview.  Do

5   you agree with that?

14:11:43  6   **A**   Yes.

14:11:43  7   **Q**   And it actually notes there are certain time frames that are

8   taken out.  Do you agree with that?

14:11:50  9   **A**   Yes.

14:11:50  10  **Q**   Okay.  One of the things that's not in there is at one point

11  in the interview, you asked Mr. Nformangum if he was autistic.

14:12:00  12       **MR. BENNETT:**  I'm going to object to the relevance of

13  this questioning.

14:12:03  14       **THE COURT:**  I'll allow that one.

14:12:07  15  **A**   I don't believe I came out directly and asked him that, but

16  I indirectly asked him that, yes.

14:12:11  17  **BY MR. LANDERS:**

14:12:11  18  **Q**   Okay.  Is that something you do in all of your interviews?

14:12:15  19  **A**   No.

14:12:16  20  **Q**   Was there a reason that you asked that question in this

21  case?

14:12:20  22  **A**   Yes.

14:12:21  23  **Q**   What is that reason?

14:12:25  24  **A**   The manner and style that he answered a couple of my

25  questions made me think that that possibly may be a condition.

*Mr. Landers Cross of Greg Brown*

14:12:39 1  Q   And I want to show you Defendant's Exhibit No. 3.

14:12:45 2  A   (Witness reviews document.)

14:12:47 3  Q   I just want to clarify that this was the consent to search

4  Mr. Nformangum's phone that you obtained on the date of the

5  interview.

14:13:00 6  A   Yes, it is.

14:13:00 7  Q   And it's a copy.  It's not the original, right?

14:13:03 8  A   Right.  A copy.

14:13:04 9  Q   I wasn't trying to get you there.

14:13:07 10     And it was with -- is it your understanding that it was

11  with that password and that permission that the later search of

12  Mr. Nformangum's phone was conducted?

14:13:17 13 A   Yes.  This gave the authority to search his phone.

14:13:20 14 Q   Okay.

14:13:21 15 A   Yes.

14:13:23 16 Q   Through your investigation, have you ever learned whether or

17  not this threat was relayed to Senator Cruz?

14:13:33 18     **MR. BENNETT:**  I'm going to object to this relevance,

19  Your Honor.

14:13:36 20     **MR. LANDERS:**  They asked questions about this.

14:13:38 21     **THE COURT:**  I'll allow it.

14:13:45 22 A   I can't say definitively, but I do believe that it was.

14:13:49 23 **BY MR. LANDERS:**

14:13:49 24 Q   Okay.  Did -- I believe you told us it was not Mr. Cruz who,

25  I guess, checked the answering machine for --

*Mr. Landers Cross of Greg Brown*

14:13:58 1  A   That's right.

14:13:59 2  Q   Okay.  And through your investigation and after meeting with

3  Mr. Nformangum, you came to the conclusion that there was no

4  validity to this threat; is that correct?

14:14:13 5  A   No, that's not correct.

14:14:18 6          MR. LANDERS:  No further questions, Your Honor.

14:14:21 7          MR. BENNETT:  No questions, Your Honor.

14:14:22 8          THE COURT:  All right.  You may step down, sir.  Thank

9  you.

14:14:36 10          MR. LANDERS:  We rest, Your Honor.

14:14:37 11          THE COURT:  All right.  Did you have any witnesses?

14:14:39 12          MR. BENNETT:  No further witnesses, Your Honor.

14:14:41 13          THE COURT:  Did you want to present argument?

14:14:42 14          MR. BENNETT:  Yes, Your Honor.

14:14:44 15          THE COURT:  Go ahead.

14:14:49 16          MR. BENNETT:  Judge, with respect to the motion to

17  suppress, the government's position is that it should be denied.

14:14:54 18          First of all, the fact that a magistrate judge may

19  read something that's called Miranda or that they refer to as

20  Miranda in the context of a preliminary hearing or at an initial

21  appearance does not automatically invoke Miranda under Fifth

22  Amendment, because at the time Mr. Nformangum appeared in

23  magistrate court in Fort Bend County, which is also stated in

24  his motion and his affidavit, that's when he asked for an

25  attorney, and that's when the Sixth Amendment attaches because

charges had been filed in state court on June 28th for
terroristic threats.  He's arrested on June 29th.

So the Sixth Amendment right to counsel is charge
specific, and in this case, that would attach to the state
charges.  So as outlined -- outlined in my response, Your Honor,
there was no custodial interrogation prior to June 30th when he
was read his rights by Agent Brown.  There had been no federal
charges filed.

So that Sixth Amendment right to counsel did not carry
over to the federal charges, and under *Blockburger,* even though
sometimes, if there was similar state charges, that might carry
over, that's not the case in the dual sovereignty doctrine, you
know, with the federal and state charges, Your Honor.

There was no collusion.  The FBI wasn't directing it,
so there's no exception of the *Marcus* factors that would -- that
may, you know, play into this.  You know, that's just kind of a
summary of what I put in my response, Your Honor, but in these
circumstances, as testified by Mr. Nformangum and Agent Brown,
he did not invoke his Fifth Amendment right to counsel, which
would have carried over into any federal charges.  That was not
done.

It was only at the time he appeared in front of the
magistrate court which he invoked his Sixth Amendment right to
counsel, which did not carry over to the federal charges that
he's indicted on, Your Honor.

14:16:41  1          THE COURT:  Thank you.

14:16:50  2          MR. LANDERS:  And, Judge, I brought along with me,

       3  because I realize -- I know you've been doing this a lot longer

       4  than me and know a lot more than I do, but you don't always work

       5  in Texas court.  So I brought you a copy and I brought the

       6  government a copy -- copy of -- with your permission, Judge --

14:17:10  7      (Document handed to the Court.)

14:17:11  8          MR. LANDERS:  -- of two statutory provisions.  One is

       9  Texas Code of Criminal Procedure 38.22, and I believe the other

      10  one is Article 15.17 of the Texas Code of Criminal Procedure.

14:17:26 11          Texas takes, with strong stance, protecting Miranda

      12  rights specifically.  This -- what's, I think, been referred to

      13  as arraignment is more of a magistrate warning that's required

      14  in Texas after -- or within 48 hours of arrest.  It does tell

      15  someone what they're arrested for, but under Article 15.17, they

      16  are -- an arrested suspect, the defendant, is specifically read

      17  their Miranda rights.

14:17:53 18          Under Article 38.22, we kind of have our own

      19  exclusionary rule for statements to make sure that *Miranda's*

      20  being complied with.  For an oral statement, like the one in

      21  this case, there are a couple of requirements.  Number one, the

      22  statement must be recorded; number two, either Miranda has to be

      23  read on that recording or, under Article 15.17, the magistrate

      24  could have read those Miranda warnings.

14:18:24 25          The reason this is important is these protections are

Fifth Amendment protections.  I agree with the government.  If

Mr. Nformangum had been brought up before a magistrate and told

he had the right to an attorney during court proceedings and

that was it, and he said, "I want a lawyer," then he would have

only invoked his Sixth Amendment rights.  We wouldn't have a

case then.

14:18:50  But because he was specifically read his Miranda

warnings, which we know are designed to protect your Fifth

Amendment right to remain silent, and whenever he was provided

these warnings and signed them, he asked for a lawyer, he did

invoke his Fifth Amendment rights.

14:19:11  I would like to address some of the government's cases

briefly.  The *Montejo* case, the Supreme Court case, is a Sixth

Amendment case.  There's some major differences in that case.

14:19:24  First of all, that defendant never invoked his right

to counsel when Miranda was read.  Mr. Nformangum invoked it the

first time Miranda was read by that magistrate.

14:19:39  Also, during the preliminary proceeding in *Montejo*,

there's absolutely no evidence that whatever that jurisdiction

was had the special Fifth Amendment protections built in.  It's

a different case.  *Montejo* is clear that *Edwards versus Arizona*

is good law.

14:20:03  The *Cooper* case out of the Fifth Circuit, in the

government's brief, there was no Miranda warnings read during

the arraignment, and then they cite a quotation in footnote two

from the Supreme Court case in *McNeil* that tells us in order to

invoke your Fifth Amendment right, which is at issue here, it

requires, at a minimum, some statement that can reasonably be

construed to be an expression of a desire for the assistance of

an attorney in dealing with custodial interrogation by the

police.

Whenever a bailiff or a magistrate reads you your

Miranda rights, and you say you want a lawyer -- in this case

you say you want a lawyer for the criminal case as well -- you

can invoke both Fifth and Sixth Amendment rights at the same

time in the state of Texas. And when you think about this, one

concern that you might have, Your Honor, is, okay, so everybody

arrested in Texas, whenever they ask for a lawyer, is invoking

both Fifth and Sixth Amendment rights.

Well, that's not the case. This is not the usual

case. Usually, when someone is arrested, as Special Agent Brown

tells us, they're going to be interviewed pretty dang quickly,

not over -- or 48 hours later.

So what makes this case different than the cases cited

by the government is not only does it take place in Texas, where

we've got these special Fifth Amendment protections built into

our code of criminal procedure, but it was kind of a weird case.

It's a case where Mr. Nformangum sits in jail for 48 hours

before anyone comes to see him.

So under *Edwards versus Arizona*, we have: The first

1    time Mr. Nformangum is read his Miranda rights, he asked for a

2    lawyer, check.  Under the Fifth Amendment, so long as it

3    applies, only Mr. Nformangum can initiate an interrogation.

4    Everybody agrees he didn't initiate this.

14:22:11 5        It's a weird case.  It's factually strange, but in

6    this particular circumstance, at that magistrate warning

7    hearing, whatever you want to call it, it's our argument that

8    Mr. Nformangum invoked both his Fifth and Sixth Amendment

9    rights.  And because the Fifth Amendment is involved, his

10   subsequent statement must be suppressed, and because his consent

11   to search was given during that statement, including the

12   password for his phone, that must be suppressed as well.

14:22:41 13       Thank you, Judge.

14:22:42 14       **THE COURT:**  All right.  Mr. Bennett, you want to

15   respond?

14:22:45 16       **MR. BENNETT:**  Yes, Your Honor.

14:22:45 17       I think counsel's conflating the Fifth and Sixth

18   Amendment rights as they apply.  According to the Supreme Court,

19   to invoke the Sixth Amendment interest is, as a matter of fact,

20   not to invoke *Miranda-Edwards* interest.  So the fact that this

21   magistrate judge is reading something called "Miranda rights"

22   does not automatically mean that he is invoking his Fifth

23   Amendment rights in a Sixth Amendment setting because the Sixth

24   Amendment is triggered when a prosecution is commenced, when

25   formal charges are filed, and when there is a preliminary

1    hearing, indictment, or arraignment.

2         And it may be in Texas this is not going to pass

3    muster, and I would argue that -- if we were proceeding on the

4    Texas charge, I would argue he invoked his Sixth Amendment right

5    to counsel and, therefore, they couldn't interrogate him.  But

6    due to the fact that we have separate sovereigns, and the fact

7    that invoking your right to counsel at a judiciary proceeding

8    does not automatically or impliedly invoke your Fifth Amendment.

9         So -- and the *Montejo* case doesn't apply here, Judge.

10   All that case did was get rid of the *Michigan/Jackson* case,

11   which required -- basically, the court said the *Miranda-Edwards*

12   rule kind of carried over in state proceedings.  You didn't need

13   *Michigan/Jackson* to carry over that right to counsel that's

14   invoked in the Fifth Amendment to the Sixth Amendment.

15        So that's -- and that case didn't deal with the dual

16   sovereign doctrine.  So I think, Judge, based on, you know, our

17   written response and based on the circumstances in this case, he

18   did not invoke any Sixth Amendment right to counsel on his

19   federal charges after being read his rights and advisals by the

20   magistrate judge in Fort Bend County; therefore, the suppression

21   should be denied.

22        **THE COURT:**  All right.  Very well-presented argument,

23   and it is a little troubling when the rights accorded under both

24   state -- under law on the one hand and federal law on the other

25   hand are not perfectly overlapping.  Obviously, they overlap to

1   some extent, but there are differences, and this case is one of

2   the unusual ones that falls within that space.

14:25:05  3   I'm going to deny the motion to suppress.  I believe

4   that there were sufficient warnings given, and the nature,

5   timing, and content of the responses does not require

6   suppression.

14:25:23  7   What else do we need to do today?

14:25:25  8   **MR. LANDERS:**  I don't know that we need to do it

9   today, Judge.  We have the motion --

14:25:28 10   **THE COURT:**  Mic.

14:25:29 11   **MR. LANDERS:**  We have the motion to dismiss for First

12   Amendment grounds, which also, pretty clearly, is going to

13   affect the jury charge.  But I don't know if that's something

14   for today or another day.

14:25:40 15   **THE COURT:**  I have read the motion to dismiss.  Do you

16   want to briefly argue it?

14:25:46 17   **MR. LANDERS:**  Sure, Your Honor.

14:26:16 18   So I think one thing related to the motion to dismiss

19   is clear, that both the parties agree the case is not to be

20   dismissed prior to trial; that there would be certain jury

21   instructions which are necessary, specifically a subjective

22   intent requirement for both Counts 1 and 2.

14:26:36 23   Also, I think under *Carpenter*, it's -- what is it

24   *Counterman* -- the new case, *Counterman*, kind of provides us the

25   framework for the necessary level of intent.

I would also point out, Your Honor, that all we've raised right now is a facial challenge to both statutes. We expect that after testimony and evidence, it would be the proper time, in a different motion, to raise an as-applied challenge. And if you look at the complaint in this case, and you read the government's attachment to their response to the motion to dismiss, this is going to be an interesting case as applied, as well, because you have a -- kind of an unclear threat.

If everything is as we've heard, Mr. Nformangum didn't say he's going to do these things. It's not 100 percent sure that Mr. Cruz actually receives the threat, and then we're also dealing with, pretty clearly, some political-type speech. But related only to the -- the facial challenge, which is permitted in the First Amendment con- -- context, we content, under Count 1, that 18, U.S.C., Section 115 is unconstitutional.

We believe that its language goes beyond true threats, things that are only threats, and I would also point out this is the one that deals more --

**THE COURT:** The statute has passed facial challenges before, correct?

**MR. LANDERS:** I believe it has, Your Honor.

I have not seen a case --

**THE COURT:** Is there any case that says that the facial challenge is merit -- has merit?

**MR. LANDERS:** Not that I found.

1  **THE COURT:**  So you're asking me to take a position

2  that no other court confronted with this question has taken?

3  **MR. LANDERS:**  I haven't seen a whole lot of cases on

4  it, but, yes, we are, Judge.

5  Very briefly I would point out one thing that I find

6  interesting, the *RAB versus City of St. Paul* case, the cross

7  burning case.  So, generally, that very type of statute could

8  pass constitutional muster unless -- in that case, the infirmity

9  was it was singled out to a particular type of speech.

10  In this case, even if it only -- the statute only

11  regulates true threats, it's only limited to a certain type of

12  political speech, speech which is intended to make an elected

13  official do something.  So we think that *RAB* case might actually

14  apply here.  I've not seen that and that analysis apply to this.

15  I'll move on to the next statute, Judge.

16  This one -- and I apologize.  I don't think that I

17  briefed *Alanis* in my briefing.  I had it in my file.  I simply

18  must have missed it.

19  That *Alanis* case specifically read in the necessary

20  intent requirement.

21  **THE COURT:**  Uh-huh.

22  **MR. LANDERS:**  I would point out that that case is

23  also -- specifically was a statutory based case.  At the end of

24  the case, they say, We're not going to address the First

25  Amendment issues.  So that it's not necessarily binding on the

1    Court.

2    If there's no other questions, we'll sit down on that

3    as well.

4    **THE COURT:**  All right.  Thank you.

5    Mr. Bennett?

6    **MR. BENNETT:**  Just briefly, Your Honor.  I mean, the

7    Court pointed out all the cases, including Supreme Court, have

8    upheld statutes restricting free speech when there's a true

9    threat, and *Counterman* took this a step further to ensure that

10   any borderline threats that would maybe fall under negligence,

11   that went ahead and put that reckless as a minimum subjective

12   intent.

13   So I think that any issues about this *Counterman* case

14   can be resolved through jury instructions that, you know, we'll

15   get to at the time.

16   But I think as far as this particular motion to

17   dismiss, it's not -- it's not overbroad.  It's not vague.  As

18   long as they satisfy the true threat jurisprudence, which I

19   believe that in this case we do, as the statutes do, I think

20   that there is no facially unconstitutional challenge that

21   warrants a dismissal of the case at this time.

22   Now, whether, after the evidence and testimony, the

23   defense counsel will do their Rule 29 and make their arguments

24   then, we can address it then.  And as far as the jury, you

25   know -- we'll make sure the jury charge comports with the

1   *Counterman* requirements, but at this time I think, Your Honor,

2   the motion to dismiss should be denied.

14:31:11 3   **THE COURT:**  Anything further?

14:31:13 4   **MR. LANDERS:**  No, Your Honor.

14:31:13 5   **THE COURT:**  All right.  Given the state of the case

6   law and the specific words of the message that is the basis of

7   this indictment, I agree with Mr. Bennett, that this issue needs

8   to be made the -- tried, and we will see if -- obviously, the

9   questions will be properly crafted for the jury, and the

10  instructions will be carefully crafted, but there is enough

11  basis in the statute and the language of the alleged threat to

12  require us to go through that process.

14:31:54 13  I don't see a basis to dismiss.  So that motion is

14  denied.  So let's talk about -- so let's -- Glenda, we have

15  denied 39 and 41.

14:32:11 16  **THE CASE MANAGER:**  Yes, ma'am.

14:32:11 17  **THE COURT:**  So let's talk about a trial schedule.

14:32:57 18  Dates?  How long is the case going to take to try,

19  two days?

14:33:02 20  **MR. BENNETT:**  I can't see more than two days.

14:33:05 21  **THE COURT:**  We've got to pick the jury.

14:33:07 22  **MR. LANDERS:**  Right.

14:33:07 23  So I think testimony would be about a day.  We'd have

24  to -- we're going to have -- we're going to argue over jury

25  instructions.

```
14:33:15  1          THE COURT:  We're going to do that in advance,
          2   largely.
14:33:18  3          MR. LANDERS:  Right.  Right.  So two days, three days.
14:33:25  4          MR. BENNETT:  That's -- I think that's sufficient,
          5   Your Honor.
14:33:26  6          THE COURT:  I think it's three days.
14:33:29  7          MR. LANDERS:  And, Your Honor, Ms. Eddins had sent us
          8   the e-mail about a week ago -- I think she's gone today --
14:33:35  9          THE COURT:  She is.
14:33:36 10          MR. LANDERS:  -- suggesting January 5th.
14:33:39 11          MR. BENNETT:  I thought it was the 8th.  Was it the
         12   5th?
14:33:41 13          MR. LANDERS:  That's what it says.
14:33:42 14          THE COURT:  January 5th is a Friday.
14:33:44 15          MR. BENNETT:  Must be the 8th.  I think it's the 8th.
14:33:46 16          MR. LANDERS:  No.
14:33:48 17          MR. BENNETT:  That's fine with us.
14:33:49 18          MR. LANDERS:  I'm sorry.  Pretrial conference on the
         19   5th.
14:33:51 20          THE COURT:  On Friday.
14:33:52 21          MR. LANDERS:  Yes, Your Honor.
14:33:54 22          THE COURT:  All right.  We can have a final pretrial
         23   conference on the 5th at 10:00 o'clock; jury selection and trial
         24   on the 8th beginning at 9:00 o'clock.  That should take care of
         25   it.
```

14:34:21  1          **MR. BENNETT:**  And, Judge, I just want to get on the

2     record -- we had discussed this previously -- that -- to advise

3     that a plea offer was made and was rejected.  So...

14:34:28  4          **THE COURT:**  All right.  And you passed the plea offer

5     along to your client, correct?

14:34:33  6          **MR. CHERNOFF:**  We have.  We have.

14:34:35  7          **THE COURT:**  Very good.  All right.  So we've got a

8     trial date and a jury selection date.  We're good.

14:34:45  9          **MR. CHERNOFF:**  Thank you, Judge.

14:34:47 10          **MR. BENNETT:**  And as far as that other motion,

11    Your Honor, just ask for it to be withdrawn as moot because I'm

12    not seeking to introduce those documents.

14:34:54 13          **THE COURT:**  Yes.

14:34:56 14          **MR. BENNETT:**  Or denied as moot.

14:34:57 15          **THE COURT:**  Yes.  That avoided one issue.  Thank you

16    for that.

14:35:01 17          Okay.  Do you want these -- no, I've got them.  Here

18    are the exhibits, too.

14:35:08 19          Do you want your Texas statute back?

14:35:10 20          **MR. LANDERS:**  Sure.  Unless you want it, Judge.

14:35:12 21          **THE COURT:**  It's all right.

14:35:14 22          Thank you very much.

14:35:15 23          **MR. BENNETT:**  Thank you, Your Honor.

14:35:16 24          **THE COURT:**  You are all excused.

14:35:17 25          *(Proceedings concluded at 2:35 p.m.)*

1                          -o0o-

2        I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above matter.

4

5   Date:  November 27, 2023

6                      /s/ Heather Alcaraz
                       Signature of Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. BENNETT: [34]** 4/7 4/15 4/22 5/14 16/10 17/3 17/17 17/21 17/24 18/5 18/7 18/16 20/16 23/16 26/10 28/6 36/22 37/12 38/18 39/7 39/12 39/14 39/16 44/16 49/6 50/20 51/4 51/11 51/15 51/17 52/1 52/10 52/14 52/23

**MR. CHERNOFF: [15]** 4/9 4/11 5/18 5/21 6/9 12/20 12/24 15/2 15/6 15/18 16/8 17/4 17/15 52/6 52/9

**MR. LANDERS: [35]** 4/3 4/18 5/1 5/3 5/5 5/9 5/15 5/17 12/25 17/19 17/23 18/9 23/14 38/20 39/6 39/10 41/2 41/8 46/8 46/11 46/17 47/21 47/25 48/3 48/22 50/4 50/22 51/3 51/7 51/10 51/13 51/16 51/18 51/21 52/20

**THE CASE MANAGER: [2]** 5/10 50/16

**THE COURT: [74]**

**THE WITNESS: [3]** 7/20 15/11 15/14

**-**

**-- were [1]** 10/7

**-o0o [1]** 53/1

**/**

**/s [1]** 53/6

**1**

**10 [2]** 25/4 27/8

**100 percent [1]** 47/10

**1000 [1]** 1/13

**10:00 o'clock [1]** 51/23

**115 [1]** 47/15

**11:00 [1]** 11/2

**11:00 a.m [3]** 11/7 11/15 13/23

**12 [2]** 4/21 8/21

**12:00 [1]** 8/6

**12:00 p.m [4]** 7/17 7/22 7/23 11/2

**12:23 p.m [1]** 20/9

**15 [1]** 8/21

**15.17 [3]** 41/10 41/15 41/23

**17607 [1]** 6/21

**18 [1]** 47/15

**2**

**20 [1]** 11/16

**2022 [7]** 6/25 21/7 21/25 24/9 30/6 32/13 34/4

**2023 [3]** 1/9 3/3 53/5

**222-9141 [1]** 1/20

**23 [3]** 1/9 3/3 6/17

**2300 [1]** 1/13

**250-5584 [1]** 2/4

**26 [1]** 30/6

**26th [2]** 19/16 20/3

**27 [1]** 53/5

**27th [5]** 20/14 21/25 23/5 30/11 30/12

**28th [16]** 6/25 10/19 11/3 19/18 24/6 24/7 24/9 30/18 30/21 30/24 30/24 31/2 31/6 31/19 35/21 40/1

**29 [1]** 49/23

**29th [6]** 11/6 11/15 13/23 31/2 31/19 40/2

**2:35 [1]** 52/25

**3**

**300 [2]** 1/16 1/19

**30th [11]** 14/7 17/9 25/17 31/11 31/23 32/1 32/13 34/4 35/21 36/4 40/6

**367 [1]** 1/5

**38.22 [2]** 41/9 41/18

**39 [1]** 50/15

**4**

**41 [1]** 50/15

**48 [4]** 34/18 41/14 43/18 43/23

**4:22-CR-367 [1]** 1/5

**5**

**5000 [1]** 1/17

**515 [1]** 2/3

**5584 [1]** 2/4

**567-9540 [1]** 1/14

**5th [5]** 51/10 51/12 51/14 51/19 51/23

**6**

**685-5000 [1]** 1/17

**7**

**713 [4]** 1/14 1/17 1/20 2/4

**77002 [4]** 1/13 1/17 1/20 2/4

**8**

**8004 [1]** 2/3

**8th [4]** 51/11 51/15 51/15 51/24

**9**

**9141 [1]** 1/20

**917 [2]** 1/16 1/19

**9540 [1]** 1/14

**9:00 o'clock [1]** 51/24

**A**

**a.m [3]** 11/7 11/15 13/23

**able [1]** 34/19

**about -- so [1]** 50/14

**above [1]** 53/3

**absolutely [1]** 42/19

**accorded [1]** 45/23

**According [1]** 44/18

**Act [1]** 21/8

**acting [1]** 25/15

**ACTION [1]** 1/4

**actually [9]** 20/8 20/12 26/23 32/17 32/23 33/23 37/7 47/11 48/13

**address [4]** 6/8 42/12 48/24 49/24

**addresses [1]** 21/16

**administration [1]** 19/7

# A

**admitted [2]** 5/4 5/13
**admonishment [1]** 5/6
**advance [1]** 51/1
**advice [2]** 27/16 35/16
**advisals [2]** 27/18 45/19
**advise [1]** 52/2
**advisor [2]** 22/1 22/2
**affect [1]** 46/13
**affidavit [1]** 39/24
**after [15]** 8/8 8/19 10/4
11/24 12/5 14/5 15/13 28/2
28/24 29/5 39/2 41/14 45/19
47/3 49/22
**after -- or [1]** 41/14
**afternoon [4]** 4/2 4/7 16/13
21/4
**again [9]** 10/1 12/6 13/16
14/21 28/2 28/3 28/9 29/12
30/6
**age [4]** 6/16 6/17 36/11
36/12
**agencies [1]** 8/11
**agency [1]** 28/13
**agent [17]** 4/8 4/15 14/13
16/19 17/9 17/19 17/20
17/22 18/23 18/24 19/1 28/9
29/4 29/12 40/7 40/18 43/16
**Agent Brown [5]** 4/8 16/19
17/20 17/22 40/18
**agents [1]** 14/10
**ago [1]** 51/8
**agree [11]** 26/25 32/21 35/4
35/10 35/12 35/13 37/5 37/8
42/1 46/19 50/7
**Agreed [1]** 35/11
**agreement [3]** 4/20 4/23
5/13
**agrees [1]** 44/4
**ahead [8]** 4/5 4/14 5/20 16/9
17/6 18/15 39/15 49/11
**Alanis [2]** 48/17 48/19
**Alcaraz [2]** 2/2 53/6
**alleged [1]** 50/11

**allow [2]** 37/14 38/21
**along [6]** 4/8 23/15 23/16
26/24 41/2 52/5
**alongside [1]** 11/16
**already [1]** 33/16
**always [1]** 41/4
**AMBE [2]** 1/6 6/19
**Amendment [32]** 39/22
39/25 40/3 40/9 40/19 40/23
42/1 42/5 42/9 42/11 42/14
42/20 43/2 43/10 43/14
43/21 44/2 44/8 44/9 44/18
44/19 44/23 44/23 44/24
45/4 45/8 45/14 45/14 45/18
46/12 47/14 48/25
**AMERICA [1]** 1/4
**American [1]** 21/12
**analysis [1]** 48/14
**another [2]** 12/6 46/14
**answer's [1]** 31/16
**answered [3]** 9/19 14/23
37/24
**answering [1]** 38/25
**anybody [1]** 9/3
**anyone [2]** 26/2 43/24
**anything [4]** 9/22 17/16
28/19 50/3
**apologize [3]** 20/13 33/12
48/16
**appeal [1]** 21/8
**appearance [1]** 39/21
**appearances [3]** 1/10 2/1
4/5
**appeared [3]** 25/11 39/22
40/22
**applied [2]** 47/4 47/7
**applies [1]** 44/3
**apply [4]** 44/18 45/9 48/14
48/14
**appointed [3]** 12/3 12/4
12/11
**approach [4]** 12/20 12/22
20/16 20/18
**approached [1]** 13/25

**approximately [3]** 7/17
7/23 8/21
**area [4]** 22/25 23/2 28/12
28/14
**argue [4]** 45/3 45/4 46/16
50/24
**argument [3]** 39/13 44/7
45/22
**arguments [1]** 49/23
**Arizona [2]** 42/21 43/25
**around [3]** 11/2 11/20
30/18
**arraignment [4]** 14/5 41/13
42/25 45/1
**arranged [1]** 25/25
**arrest [14]** 7/8 7/16 8/12
8/19 9/3 24/17 24/25 28/24
29/17 30/20 32/6 33/19
34/18 41/14
**arrested [21]** 7/5 7/10 7/12
7/13 7/14 11/3 15/4 24/8
24/9 24/10 24/12 24/15
28/20 29/5 29/15 30/23 40/2
41/15 41/16 43/13 43/16
**arresting [2]** 31/4 33/11
**arrests [1]** 32/5
**Article [4]** 41/10 41/15
41/18 41/23
**as-applied [1]** 47/4
**ask [10]** 9/21 12/22 15/1
15/6 18/2 20/17 27/2 36/14
43/13 52/11
**asked [17]** 9/16 9/16 11/6
12/1 15/3 16/1 16/17 24/24
35/21 37/11 37/15 37/16
37/20 38/20 39/24 42/10
44/1
**asking [3]** 9/18 15/3 48/1
**asserting [2]** 13/15 13/19
**assessment [2]** 22/6 31/13
**assigned [2]** 19/12 29/23
**assistance [1]** 43/4
**assistant [1]** 31/21
**assume [1]** 7/25

## A

**assumption [1]** 34/23
**attach [1]** 40/4
**attaches [1]** 39/25
**attachment [1]** 47/6
**attempting [1]** 8/12
**attention [1]** 6/25
**attorney [12]** 1/16 1/19 10/12 12/2 12/3 12/4 12/11 13/20 31/21 39/25 42/3 43/5
**Attorney's [2]** 1/12 29/22
**attorneys [1]** 26/8
**AUSA [2]** 29/23 36/1
**authorities [1]** 31/3
**authority [2]** 8/4 38/13
**autistic [1]** 37/11
**automatically [3]** 39/21 44/22 45/8
**avoided [1]** 52/15
**aware [17]** 7/13 16/24 16/25 20/22 30/14 30/20 30/23 30/24 30/25 32/2 32/8 34/8 34/12 34/16 34/21 35/20 35/22
**aware -- I [1]** 30/20
**away [1]** 8/21

## B

**bachelor's [1]** 19/6
**back [5]** 11/22 11/24 12/5 12/5 52/19
**background [1]** 19/4
**bad [1]** 33/12
**bailiff [2]** 12/9 43/7
**bailiffs [3]** 12/1 12/6 12/18
**banging [1]** 7/24
**Barton [1]** 6/21
**based [4]** 36/11 45/16 45/17 48/23
**basic [1]** 30/3
**basically [3]** 22/8 32/10 45/11
**basis [3]** 50/6 50/11 50/13
**become [1]** 29/20

**been [23]** 13/25 15/13 18/1 18/24 28/20 29/12 29/15 30/2 30/23 30/25 31/20 31/24 32/2 33/10 33/17 33/20 34/8 34/19 40/1 40/7 41/3 41/12 42/2
**before [17]** 1/8 4/19 10/22 11/16 12/1 13/8 14/21 15/4 15/9 16/16 25/19 26/3 34/8 34/17 42/2 43/24 47/20
**beforehand [1]** 36/2
**begin [2]** 4/19 5/19
**beginning [1]** 51/24
**behalf [1]** 25/15
**being [12]** 7/5 7/12 7/13 7/14 9/22 21/17 25/2 29/9 32/5 32/24 41/20 45/19
**believe [12]** 26/20 30/20 33/8 36/6 37/15 38/22 38/24 41/9 46/3 47/16 47/21 49/19
**belt [1]** 33/19
**Bend [19]** 8/14 8/14 8/16 8/21 10/17 10/25 14/14 23/1 23/3 24/16 24/19 25/3 26/2 30/14 32/9 32/17 33/14 39/23 45/20
**BENNETT [7]** 1/12 4/8 16/9 16/15 44/14 49/5 50/7
**best [1]** 28/19
**better [2]** 29/3 36/19
**beyond [1]** 47/16
**binder [1]** 20/20
**binding [1]** 48/25
**bit [2]** 23/6 32/4
**Blockburger [1]** 40/10
**blue [1]** 26/8
**book [1]** 5/11
**borderline [1]** 49/10
**both [9]** 8/16 14/10 43/10 43/14 44/8 45/23 46/19 46/22 47/2
**bottom [1]** 27/20
**break [1]** 7/25
**brick [1]** 21/11

**brief [3]** 14/20 21/2 42/24
**briefed [1]** 48/17
**briefing [2]** 30/1 48/17
**briefly [5]** 19/4 42/13 46/16 48/5 49/6
**bring [1]** 6/25
**brought [12]** 10/16 10/17 10/22 11/16 11/18 11/21 11/22 32/23 41/2 41/5 41/5 42/2
**Brown [14]** 1/22 4/8 4/16 14/13 16/19 17/19 17/20 17/22 18/17 18/21 28/9 40/7 40/18 43/16
**Brownson [6]** 14/14 25/21 27/12 31/5 33/9 33/14
**built [2]** 42/20 43/21
**bullet [1]** 21/10
**burden [1]** 5/18
**burning [1]** 48/7
**business [1]** 19/6

## C

**call [8]** 5/22 9/17 9/18 17/19 18/3 22/12 30/7 44/7
**called [7]** 6/12 11/24 11/25 12/6 29/22 39/19 44/21
**caller [2]** 21/6 22/12
**calling [1]** 6/12
**calls [1]** 4/15
**came [8]** 11/5 14/3 14/9 16/19 20/3 25/5 37/15 39/3
**can't [2]** 38/22 50/20
**capitol [3]** 22/3 22/5 22/10
**car [1]** 9/25
**care [1]** 51/24
**carefully [1]** 50/10
**Carpenter [1]** 46/23
**carried [2]** 40/20 45/12
**carry [4]** 40/9 40/11 40/24 45/13
**case [59]**
**cases [6]** 29/14 34/14 42/12 43/19 48/3 49/7
**catch [1]** 29/24

**C**

catch-up [1] 29/24
Cath [1] 22/13
cell [4] 15/22 15/23 15/24 33/5
certain [4] 17/24 37/7 46/20 48/11
certify [1] 53/2
challenge [5] 47/2 47/4 47/13 47/24 49/20
challenges [1] 47/19
channel [3] 23/9 23/11 23/12
charge [6] 23/24 32/10 40/3 45/4 46/13 49/25
charges [12] 25/6 31/12 40/1 40/5 40/8 40/10 40/11 40/13 40/20 40/24 44/25 45/19
check [1] 44/2
checked [1] 38/25
CHERNOFF [3] 1/18 4/9 4/11
Circuit [1] 42/23
circumstance [1] 44/6
circumstances [4] 7/7 7/15 40/18 45/17
cite [1] 42/25
cited [1] 43/19
City [2] 28/13 48/6
civic [1] 21/11
clarified [1] 10/3
clarify [1] 38/3
clear [4] 11/3 33/22 42/21 46/19
clearly [3] 32/20 46/12 47/12
client [1] 52/5
close [1] 36/11
closely [1] 7/19
closest [1] 24/25
code [3] 41/9 41/10 43/22
Cole [2] 1/22 4/8
colleagues [2] 21/13 21/19

collected [1] 30/2
collusion [1] 40/14
come [3] 4/4 26/1 32/11
comes [1] 43/24
coming [1] 29/21
commenced [1] 44/24
complaint [6] 23/19 24/2 24/2 24/5 24/10 47/5
complaint -- state [1] 24/2
complete [1] 37/4
complied [2] 18/2 41/20
comports [1] 49/25
computer [1] 1/25
con [1] 47/14
concern [1] 43/12
concerns [1] 36/18
concluded [1] 52/25
conclusion [1] 39/3
condition [1] 37/25
conduct [1] 19/2
conducted [1] 38/12
conference [2] 51/18 51/23
confirmed [1] 8/13
conflating [1] 44/17
confronted [1] 48/2
connecting [1] 27/13
consent [6] 27/2 27/6 27/7 27/14 38/3 44/10
consist [1] 9/8
constitutional [1] 48/8
construed [1] 43/4
contained [1] 26/18
content [2] 46/5 47/14
context [2] 39/20 47/14
CONTINUED [1] 2/1
continues [1] 21/21
conversation [7] 9/11 9/14 9/20 9/24 10/5 10/6 31/3
Cooper [1] 42/23
coordinating [1] 25/12
copy [10] 5/9 24/1 24/5 26/24 31/20 38/7 38/8 41/5 41/6 41/6
copy -- copy [1] 41/6

correct [19] 12/17 13/13 14/24 15/14 16/5 16/20 16/21 24/10 24/11 25/8 32/19 33/15 35/19 36/8 39/4 39/5 47/20 52/5 53/2
correctly [1] 36/13
could [3] 10/25 41/24 48/7
couldn't [1] 45/5
counsel [10] 40/3 40/9 40/19 40/24 42/16 45/5 45/7 45/13 45/18 49/23
counsel's [1] 44/17
Count [1] 47/15
Counterman [5] 46/24 46/24 49/9 49/13 50/1
Counterman -- the [1] 46/24
Counts [1] 46/22
county [23] 8/21 9/18 10/1 10/2 10/16 10/17 14/14 23/1 23/3 23/24 23/25 24/16 24/19 25/3 25/5 26/2 30/14 32/10 32/17 32/24 33/14 39/23 45/20
couple [2] 37/24 41/21
course [1] 17/6
court [25] 1/1 2/2 2/3 4/19 6/13 12/3 12/4 12/11 21/2 29/15 39/23 40/1 40/23 41/5 41/7 42/3 42/13 43/1 44/18 45/11 48/2 49/1 49/7 49/7 53/6
court-appointed [3] 12/3 12/4 12/11
courthouse [4] 11/25 12/5 12/18 32/7
courthouse -- the [1] 12/18
courtroom [6] 11/17 11/21 11/22 11/23 12/18 26/5
CR [1] 1/5
crafted [2] 50/9 50/10
criminal [6] 1/4 23/19 41/9 41/10 43/9 43/22
cross [4] 16/11 18/3 28/7

**C**

cross... **[1]** 48/6
**CROSS-EXAMINATION [2]** 16/11 28/7
Cruz **[5]** 19/15 19/23 38/17 38/24 47/11
Cruz's **[1]** 21/24
CSR **[1]** 2/2
current **[1]** 21/7
currently **[2]** 6/20 6/21
custodial **[2]** 40/6 43/5

**D**

D.C **[1]** 22/4
dang **[1]** 43/17
databases **[2]** 22/8 22/17
date **[5]** 7/3 38/4 52/8 52/8 53/5
Dates **[1]** 50/18
day **[13]** 7/5 11/1 14/5 20/3 20/10 20/12 24/4 28/21 28/23 30/15 31/1 46/14 50/23
days **[9]** 25/4 31/23 32/3 32/11 50/19 50/20 51/3 51/3 51/6
dead **[1]** 21/20
deal **[1]** 45/15
dealing **[2]** 43/5 47/12
deals **[1]** 47/18
decided **[1]** 31/25
decision **[1]** 31/24
defendant **[14]** 1/15 4/2 22/15 23/2 24/22 25/24 26/1 26/11 26/24 27/13 30/2 34/22 41/16 42/15
defendant's **[3]** 3/11 22/21 38/1
defense **[9]** 5/5 5/6 13/2 34/24 35/4 35/13 35/15 36/6 49/23
definitively **[1]** 38/22
degree **[1]** 19/6
denied **[6]** 39/17 45/21 50/2

50/14 50/15 52/14
deny **[1]** 46/3
Department **[2]** 8/15 8/17
deputy **[2]** 12/17 17/10
describe **[5]** 7/15 8/11 10/25 11/15 26/7
Describe -- tell **[1]** 8/11
description **[1]** 19/5
designed **[1]** 42/8
desire **[1]** 43/4
detachment **[1]** 8/14
detail **[1]** 28/16
detailed **[1]** 15/10
details **[2]** 15/4 16/19
Detective **[4]** 14/14 25/21 27/12 31/5
determine **[1]** 22/6
determined **[2]** 22/14 22/23
develop **[1]** 36/18
diagnoses **[1]** 36/20
diagram **[2]** 27/10 27/11
did -- did **[1]** 23/5
Did -- I **[1]** 38/24
didn't **[8]** 30/13 31/11 33/10 36/14 44/4 45/12 45/15 47/9
differences **[2]** 42/14 46/1
different **[3]** 42/21 43/19 47/4
differently **[1]** 15/7
DIRECT **[2]** 6/4 18/18
directing **[2]** 25/12 40/14
direction **[1]** 29/23
directly **[2]** 18/14 37/15
discuss **[1]** 7/7
discussed **[2]** 36/1 52/2
discussion **[1]** 21/17
dismiss **[7]** 46/11 46/15 46/18 47/7 49/17 50/2 50/13
dismissal **[1]** 49/21
dismissed **[1]** 46/20
DISTRICT **[4]** 1/1 1/1 1/9 20/1
DIVISION **[1]** 1/2
doctrine **[2]** 40/12 45/16

document **[3]** 35/1 38/2 41/7
documents **[2]** 19/19 52/12
does **[8]** 21/18 28/16 39/21 41/14 43/20 44/22 45/8 46/5
doesn't **[2]** 34/13 45/9
doing **[1]** 41/3
done **[4]** 18/1 31/20 32/17 40/21
door **[2]** 7/24 8/4
dots **[1]** 27/12
down **[8]** 11/24 12/5 17/18 25/5 32/11 36/16 39/8 49/2
downstairs **[1]** 8/3
dress **[1]** 26/9
drew **[1]** 27/11
driveway **[1]** 8/2
dual **[2]** 40/12 45/15
due **[1]** 45/6
DULY **[2]** 6/3 18/17
during **[11]** 9/1 9/3 10/6 15/17 15/21 34/4 36/18 42/3 42/18 42/24 44/11
duties **[1]** 19/1
duty **[1]** 21/12

**E**

e-mail **[1]** 51/8
earlier **[1]** 30/22
Ed **[2]** 4/9 4/11
Eddins **[1]** 51/7
educational **[1]** 19/4
EDWARD **[1]** 1/18
Edwards **[4]** 42/21 43/25 44/20 45/11
either **[1]** 41/22
elected **[1]** 48/12
electronic **[1]** 12/7
eligible **[1]** 12/10
else **[1]** 46/7
employed **[1]** 18/22
end **[2]** 10/5 48/23
enforcement **[5]** 14/1 14/3 15/10 22/8 32/15
enough **[1]** 50/10

## E

**ensure [1]** 49/9
**especially [1]** 29/19
**essentially [1]** 35/10
**even [4]** 6/12 31/13 40/10 48/10
**ever [7]** 10/7 25/23 27/22 27/25 34/13 34/13 38/16
**ever -- it [1]** 34/13
**every [4]** 21/9 21/12 21/12 21/19
**everybody [2]** 43/12 44/4
**everything [2]** 36/12 47/9
**evidence [7]** 19/2 30/2 30/3 30/15 42/19 47/3 49/22
**evidentiary [1]** 4/13
**exactly [1]** 32/8
**EXAMINATION [5]** 6/4 16/11 17/7 18/18 28/7
**exception [1]** 40/15
**exclusionary [1]** 41/19
**excused [1]** 52/24
**exhibit [19]** 5/6 5/7 12/21 13/2 20/20 20/24 24/1 26/18 27/8 27/16 34/24 35/3 35/4 35/13 35/15 36/6 37/1 37/2 38/1
**Exhibit 1 [4]** 5/6 13/2 20/24 35/4
**Exhibit 2 [4]** 35/13 35/15 36/6 37/1
**Exhibit 7 [1]** 24/1
**exhibits [5]** 4/20 4/21 5/11 20/21 52/18
**expect [1]** 47/3
**explained [1]** 32/9
**expression [1]** 43/4
**extent [1]** 46/1
**extradited [1]** 32/11

## F

**face [1]** 21/10
**Facebook [1]** 23/8
**facial [4]** 47/2 47/13 47/19 47/24
**facially [1]** 49/20
**fact [7]** 8/2 14/16 39/18 44/19 44/20 45/6 45/6
**factors [1]** 40/15
**facts [1]** 31/14
**factually [1]** 44/5
**fair [2]** 31/23 34/23
**fall [1]** 49/10
**falls [1]** 46/2
**familiar [1]** 19/8
**far [3]** 49/16 49/24 52/10
**FBI [9]** 14/13 18/23 18/24 19/1 28/17 29/4 29/8 35/16 40/14
**FCRR [1]** 2/2
**feasible [1]** 29/3
**federal [20]** 6/13 8/16 9/11 14/10 17/9 25/6 25/10 25/11 31/12 31/15 31/24 32/5 36/1 40/7 40/10 40/13 40/20 40/24 45/19 45/24
**Fifth [18]** 39/21 40/19 42/1 42/8 42/11 42/20 42/23 43/2 43/10 43/14 43/21 44/2 44/8 44/9 44/17 44/22 45/8 45/14
**Fifth Circuit [1]** 42/23
**figuring [1]** 31/21
**file [2]** 5/6 48/17
**filed [8]** 23/20 23/22 23/24 24/4 24/6 40/1 40/8 44/25
**final [1]** 51/22
**find [2]** 25/1 48/5
**finding [1]** 21/14
**findings [1]** 23/1
**fine [3]** 5/20 18/7 51/17
**first [21]** 4/17 7/25 10/21 12/16 14/3 15/12 22/12 24/5 25/23 29/15 30/18 32/14 34/17 35/8 39/18 42/15 42/17 43/25 46/11 47/14 48/24
**first -- I [1]** 35/8
**flip [1]** 37/1

**following [3]** 16/17 20/13 31/1
**footnote [1]** 42/25
**force [2]** 24/18 31/4
**foregoing [1]** 53/2
**form [12]** 12/9 12/10 12/13 12/14 13/4 13/6 13/9 27/17 35/5 35/9 35/16 35/17
**formal [2]** 6/7 44/25
**forms [1]** 5/6
**Fort [19]** 8/14 8/14 8/16 8/21 10/17 10/25 14/14 23/1 23/3 24/16 24/19 25/3 26/2 30/14 32/9 32/17 33/14 39/23 45/20
**Fort Bend [16]** 8/14 8/16 8/21 10/25 14/14 23/1 23/3 24/16 24/19 25/3 26/2 30/14 32/9 33/14 39/23 45/20
**Fort Bend -- the [1]** 8/14
**forward [2]** 7/18 18/13
**forwarded [3]** 22/3 22/25 23/1
**found [12]** 20/12 20/13 21/10 21/20 23/8 23/8 23/9 23/9 23/10 27/8 30/25 47/25
**found -- found [1]** 23/8
**frames [1]** 37/7
**framework [1]** 46/25
**Franklin [2]** 1/16 1/19
**free [3]** 32/20 32/24 49/8
**Friday [2]** 51/14 51/20
**front [6]** 5/10 11/19 11/25 11/25 12/6 40/22
**full [3]** 6/18 6/19 18/20
**further [8]** 17/3 17/16 23/4 31/17 39/6 39/12 49/9 50/3

## G

**game [1]** 23/13
**gather [2]** 19/2 31/14
**gathering [2]** 30/15 31/19
**gave [3]** 15/12 27/18 38/13
**general [1]** 22/24
**generally [4]** 29/4 29/14

**G**

**generally... [2]** 29/17 48/7
**getting [3]** 29/1 31/20 36/15
**give [2]** 21/2 27/4
**given [8]** 12/16 15/9 15/24 29/9 34/5 44/11 46/4 50/5
**Glenda [1]** 50/14
**goes [2]** 21/14 47/16
**going [20]** 5/22 29/15 31/12 31/15 31/15 32/2 36/22 37/12 38/18 43/17 45/2 46/3 46/12 47/7 47/10 48/24 50/18 50/24 50/24 51/1
**gone [1]** 51/8
**good [8]** 4/2 4/7 4/21 16/13 21/4 42/22 52/7 52/8
**got [10]** 4/19 5/5 5/12 5/16 25/5 32/10 43/21 50/21 52/7 52/17
**government [4]** 4/15 41/6 42/1 43/20
**government's [7]** 3/14 20/20 37/1 39/17 42/12 42/24 47/6
**Greg [1]** 4/16
**Gregory [4]** 1/22 14/13 18/17 18/21
**grounds [1]** 46/12
**guess [3]** 19/17 27/10 38/25

**H**

**had -- he [1]** 25/24
**had -- we [1]** 11/19
**hand [5]** 6/1 12/7 18/10 45/24 45/25
**handcuffed [1]** 11/19
**handed [1]** 41/7
**handing [1]** 20/20
**happen [1]** 10/4
**happened [2]** 19/13 30/1
**happens [1]** 10/4
**Harris [7]** 9/18 10/2 10/16 23/25 25/5 32/10 32/24
**Harris County [7]** 9/18

10/2 10/16 23/25 25/5 32/10 32/24
**have [62]**
**have -- we're [1]** 50/24
**haven't [1]** 48/3
**he [61]**
**he -- and [1]** 27/20
**He -- he [1]** 33/10
**he -- was [1]** 27/6
**he's [9]** 26/7 26/7 26/8 26/8 32/9 32/10 40/2 40/25 47/10
**health [1]** 36/19
**hear [1]** 6/6
**heard [2]** 9/5 47/9
**hearing [8]** 1/8 3/2 4/14 5/21 14/5 39/20 44/7 45/1
**Heather [2]** 2/2 53/6
**held [1]** 25/2
**Hello [1]** 21/4
**helpful [1]** 18/13
**helps [1]** 23/15
**here [11]** 4/3 4/13 5/9 15/1 26/21 28/14 28/16 43/2 45/9 48/14 52/17
**him [35]** 4/4 6/8 9/25 12/21 15/7 17/25 18/3 18/3 18/6 24/23 24/24 25/5 25/17 25/19 25/19 25/22 25/23 26/3 26/5 26/14 26/22 27/2 27/18 27/22 28/2 28/3 32/3 32/12 33/19 34/9 36/16 37/15 37/16 43/24 45/5
**hire [1]** 12/2
**hiring [1]** 29/9
**his [42]** 6/8 19/16 22/23 23/7 24/15 24/22 24/24 26/8 26/14 26/25 27/2 27/20 27/25 33/5 33/8 33/19 33/19 33/19 33/20 33/20 35/23 36/11 36/11 38/13 39/24 39/24 40/7 40/19 40/23 42/5 42/7 42/11 42/15 44/1 44/8 44/9 44/10 44/12 44/22 45/4 45/18 45/19

home [3] 7/10 21/15 24/15
**Honor [41]** 4/3 4/7 4/9 4/15 5/3 5/7 5/14 7/20 17/3 17/17 17/21 18/1 18/5 18/7 18/16 26/10 28/6 36/23 38/19 39/6 39/7 39/10 39/12 39/14 40/5 40/13 40/17 40/25 43/12 44/16 46/17 47/1 47/21 49/6 50/1 50/4 51/5 51/7 51/21 52/11 52/23
**HONORABLE [1]** 1/8
**hours [4]** 34/18 41/14 43/18 43/23
**house [2]** 8/22 23/6
**HOUSTON [10]** 1/2 1/13 1/17 1/20 2/4 19/25 22/1 28/12 28/14 32/7
**huh [4]** 9/10 10/14 33/3 48/21
**human [1]** 21/17

**I**

**I -- he [1]** 9/16
**I -- I [1]** 8/1
**I'll [7]** 17/25 23/16 36/24 37/2 37/14 38/21 48/15
**I'm [20]** 6/12 10/9 13/16 16/16 18/23 20/20 24/7 28/11 28/13 28/23 29/1 29/17 30/24 36/7 36/22 37/12 38/18 46/3 51/18 52/11
**I've [5]** 5/12 6/12 13/2 48/14 52/17
**ID [1]** 22/12
**idea [1]** 30/5
**Ideally [1]** 29/7
**identified [1]** 26/11
**impliedly [1]** 45/8
**important [1]** 41/25
**include [1]** 23/6
**including [3]** 13/20 44/11 49/7
**indicate [1]** 24/22
**indicated [1]** 25/24

## I

**indicted [1]** 40/25
**indictment [2]** 45/1 50/7
**indirectly [1]** 37/16
**individual [1]** 23/13
**individuals [2]** 14/9 17/11
**infirmity [1]** 48/8
**information [2]** 22/10 31/20
**informed [1]** 10/1
**initial [2]** 31/14 39/20
**initially [1]** 21/23
**initiate [3]** 36/3 44/3 44/4
**initiated [1]** 35/24
**inmates [2]** 11/16 11/19
**inquire [1]** 17/21
**inside [4]** 11/17 11/21 11/22 12/1
**Instagram [1]** 23/9
**instructions [4]** 46/21 49/14 50/10 50/25
**intended [1]** 48/12
**intent [4]** 46/22 46/25 48/20 49/12
**intention [1]** 21/7
**interaction [1]** 9/1
**interest [3]** 19/3 44/19 44/20
**interesting [2]** 47/7 48/6
**interrogate [3]** 11/5 28/3 45/5
**interrogated [4]** 9/22 10/2 24/23 26/3
**interrogation [5]** 15/21 17/13 40/6 43/5 44/3
**interrupt [1]** 15/1
**interview [28]** 14/1 14/4 14/9 15/21 26/1 28/2 28/20 29/2 29/5 29/9 29/14 31/10 31/25 32/13 32/14 33/4 33/13 34/4 34/9 35/18 35/25 36/3 36/15 36/16 36/18 37/4 37/11 38/5
**interviewed [2]** 35/20 43/17
**interviewing [1]** 28/17
**interviews [1]** 37/18
**introduce [1]** 52/12
**investigation [6]** 19/20 23/4 25/9 31/14 38/16 39/2
**investigations [2]** 14/15 19/2
**invoke [10]** 27/25 39/21 40/19 42/11 43/2 43/10 44/19 44/20 45/8 45/18
**invoked [7]** 40/23 42/5 42/15 42/16 44/8 45/4 45/14
**invoking [3]** 43/13 44/22 45/7
**involved [5]** 19/11 29/17 29/20 30/11 44/9
**involving [1]** 19/8
**iPad [6]** 12/7 13/4 13/7 13/12 13/14 13/18
**ISAAC [13]** 1/6 1/23 4/9 4/11 5/22 5/23 6/3 6/6 6/13 6/19 35/18 35/20 36/7
**Isaac -- I'm [1]** 36/7
**isn't [1]** 16/20
**issue [4]** 17/22 43/2 50/7 52/15
**issues [3]** 36/19 48/25 49/13
**it's -- what [1]** 46/23
**its [2]** 29/23 47/16
**itself [2]** 11/18 22/12

## J

**Jackson [2]** 45/10 45/13
**jail [14]** 8/21 9/12 10/1 10/17 10/25 11/9 11/18 24/16 24/25 25/4 25/25 32/18 33/8 43/23
**January [2]** 51/10 51/14
**January 5th [2]** 51/10 51/14
**job [1]** 24/24
**Joey [2]** 9/25 10/3
**JONATHAN [3]** 1/15 4/12 28/11
**Jones [1]** 9/16

## J (cont.)

**judge [32]** 1/9 4/18 5/18 5/21 6/9 11/17 12/20 15/2 15/6 15/10 15/18 16/8 16/17 17/4 17/19 23/14 23/16 39/16 39/18 41/2 41/6 44/13 44/21 45/9 45/16 45/20 46/9 48/4 48/15 52/1 52/9 52/20
**judiciary [1]** 45/7
**June [34]** 6/25 10/19 11/3 17/9 19/16 19/18 20/3 20/14 21/25 24/6 24/7 24/9 25/17 30/6 30/11 30/12 30/18 30/21 30/24 30/24 31/2 31/2 31/6 31/11 31/23 32/1 32/13 34/4 35/21 35/21 36/4 40/1 40/2 40/6
**June 26 [1]** 30/6
**June 26th [2]** 19/16 20/3
**June 27th [2]** 30/11 30/12
**June 28th [13]** 6/25 11/3 24/6 24/7 24/9 30/18 30/21 30/24 30/24 31/2 31/6 35/21 40/1
**June 29th [2]** 31/2 40/2
**June 30th [10]** 17/9 25/17 31/11 31/23 32/1 32/13 34/4 35/21 36/4 40/6
**jurisdiction [1]** 42/19
**jurisdiction's [1]** 32/5
**jurisprudence [1]** 49/18
**jury [10]** 46/13 46/20 49/14 49/24 49/25 50/9 50/21 50/24 51/23 52/8
**just [19]** 13/3 16/10 16/17 21/2 21/6 23/12 23/15 28/20 30/3 30/5 30/6 31/14 33/22 35/2 38/3 40/16 49/6 52/1 52/11

## K

**killed [3]** 21/10 21/13 21/20
**kind [7]** 10/12 40/16 41/18 43/22 45/12 46/24 47/8
**knew [3]** 9/17 32/4 32/12
**knock [1]** 7/24

## K

**know [36]** 7/14 7/24 8/4 9/5 9/7 9/8 9/8 9/18 10/3 10/24 12/10 16/17 22/23 22/24 23/13 24/12 26/22 30/13 30/17 30/22 31/20 32/6 32/11 33/21 36/14 40/13 40/16 40/16 41/3 41/4 42/8 45/16 46/8 46/13 49/14 49/25
**knowledge [3]** 21/16 25/21 26/2
**known [1]** 35/23

## L

**lack [1]** 36/19
**LANDERS [3]** 1/15 4/12 28/11
**Lane [1]** 6/22
**language [2]** 47/16 50/11
**largely [1]** 51/2
**last [1]** 6/8
**later [6]** 8/13 31/23 33/16 33/25 38/11 43/18
**law [11]** 1/16 1/19 13/25 14/3 15/10 22/8 32/14 42/22 45/24 45/24 50/6
**laws [1]** 34/16
**lawyer [11]** 27/23 29/9 29/10 35/21 35/24 42/4 42/10 43/8 43/9 43/13 44/2
**lean [2]** 7/18 18/13
**learned [2]** 30/18 38/16
**least [2]** 11/6 35/9
**leave [2]** 32/20 32/24
**LEE [1]** 1/8
**left [2]** 19/15 20/6
**legal [1]** 33/18
**let [2]** 9/21 26/10
**let's [3]** 50/14 50/14 50/17
**let's -- Glenda [1]** 50/14
**level [2]** 34/14 46/25
**light [2]** 14/16 26/8
**like [9]** 5/18 12/2 22/9 27/10

32/10 32/23 34/13 41/20 42/12
**limited [1]** 48/11
**line [2]** 26/24 26/24
**lines [1]** 27/13
**list [2]** 5/7 35/9
**little [3]** 26/23 32/4 45/23
**live [2]** 6/20 6/21
**lived [2]** 22/24 23/2
**living [1]** 7/1
**local [1]** 28/14
**located [1]** 22/8
**long [7]** 18/24 28/24 29/1 29/12 44/2 49/18 50/18
**longer [1]** 41/3
**look [4]** 22/8 23/7 25/10 47/5
**looked [2]** 8/2 23/8
**looking [1]** 8/8
**looks [1]** 27/10
**lose [1]** 37/2
**lot [3]** 41/3 41/4 48/3
**louder [1]** 7/19
**Louisiana [1]** 1/13

## M

**ma'am [1]** 50/16
**machine [1]** 38/25
**made [7]** 17/10 22/7 26/24 31/24 37/25 50/8 52/3
**magistrate [20]** 10/22 11/17 12/13 12/15 34/9 34/18 34/21 35/6 35/24 39/18 39/23 40/23 41/13 41/23 42/2 42/17 43/7 44/6 44/21 45/20
**mail [1]** 51/8
**major [1]** 42/14
**make [8]** 12/10 17/12 33/22 36/12 41/19 48/12 49/23 49/25
**makes [1]** 43/19
**making [1]** 9/22
**manner [1]** 37/24
**Marcus [1]** 40/15

**marshal [4]** 8/23 9/1 9/12 9/15
**marshals [3]** 8/13 8/16 8/20
**matter [2]** 44/19 53/3
**matters [1]** 19/2
**may [13]** 4/5 12/20 15/18 17/18 17/21 20/16 30/25 30/25 37/25 39/8 39/18 40/16 45/2
**maybe [1]** 49/10
**McNeil [1]** 43/1
**mean [6]** 9/2 19/13 28/21 28/23 44/22 49/6
**mechanical [1]** 1/25
**media [2]** 23/7 23/8
**meeting [1]** 39/2
**member [2]** 19/23 21/24
**mental [1]** 36/19
**mention [1]** 9/21
**merit [2]** 47/24 47/24
**message [2]** 21/24 50/6
**met [2]** 16/16 25/23
**mic [3]** 7/19 18/14 46/10
**MICHAEL [1]** 1/18
**Michigan [2]** 45/10 45/13
**Michigan/Jackson [2]** 45/10 45/13
**microphone [1]** 4/10
**midday [1]** 30/6
**might [5]** 36/19 36/20 40/11 43/12 48/13
**mind [1]** 32/4
**miniature [1]** 11/17
**minimum [2]** 43/3 49/11
**minutes [1]** 8/21
**Miranda [27]** 9/3 9/5 10/9 13/15 13/19 14/17 26/14 34/22 35/10 35/12 35/23 39/19 39/20 39/21 41/11 41/17 41/22 41/24 42/7 42/16 42/17 42/24 43/8 44/1 44/20 44/21 45/11
**Miranda's [1]** 41/19
**Miranda-Edwards [2]**

## M

**Miranda-Edwards... [2]** 44/20 45/11
**mirror [1]** 35/12
**missed [1]** 48/18
**Monday [5]** 20/14 21/25 23/5 30/11 30/12
**Montejo [4]** 42/13 42/18 42/21 45/9
**moot [2]** 52/11 52/14
**more [8]** 7/18 17/4 21/16 23/6 41/4 41/13 47/18 50/20
**morning [7]** 5/7 11/2 20/13 24/9 25/23 30/22 32/1
**mother [2]** 6/23 7/1
**motion [14]** 4/14 39/16 39/24 46/3 46/9 46/11 46/15 46/18 47/4 47/6 49/16 50/2 50/13 52/10
**move [2]** 23/16 48/15
**MR [6]** 1/12 1/15 1/18 1/22 1/23 16/13
**Mr. [43]** 6/12 7/15 13/3 16/9 19/9 24/8 24/20 25/1 25/17 26/3 30/23 31/11 31/25 32/3 32/13 32/20 33/4 33/23 34/5 34/8 35/5 36/3 36/7 36/14 36/21 37/11 38/4 38/12 38/24 39/3 39/22 40/18 42/2 42/16 43/23 44/1 44/3 44/8 44/14 47/9 47/11 49/5 50/7
**Mr. Bennett [4]** 16/9 44/14 49/5 50/7
**Mr. Cruz [2]** 38/24 47/11
**Mr. Nformangum [33]** 6/12 7/15 13/3 19/9 24/8 25/1 25/17 26/3 30/23 31/11 31/25 32/3 32/13 32/20 33/4 34/5 34/8 35/5 36/3 36/7 36/14 36/21 37/11 39/3 39/22 40/18 42/2 42/16 43/23 44/1 44/3 44/8 47/9
**Mr. Nformangum's [3]**

33/23 38/4 38/12
**Mr. Williams [1]** 24/20
**Ms [2]** 1/22 4/8
**Ms. [1]** 51/7
**Ms. Eddins [1]** 51/7
**much [1]** 52/22
**must [5]** 41/22 44/10 44/12 48/18 51/15
**muster [2]** 45/3 48/8
**my [17]** 6/19 8/1 9/4 12/4 13/20 15/24 16/15 19/12 29/21 31/7 31/21 32/4 37/24 40/5 40/17 48/17 48/17
**myself [1]** 8/4

## N

**name [8]** 6/8 6/18 6/19 18/20 22/16 22/20 22/21 22/23
**name's [1]** 16/15
**named [1]** 33/14
**names [1]** 14/12
**nature [1]** 46/4
**necessarily [2]** 28/22 48/25
**necessary [3]** 46/21 46/25 48/19
**need [6]** 4/10 12/22 20/17 45/12 46/7 46/8
**needed [1]** 25/25
**needs [2]** 12/25 50/7
**negligence [1]** 49/10
**never [2]** 25/24 42/15
**new [1]** 46/24
**next [5]** 11/1 17/19 21/18 31/21 48/15
**NFORMANGUM [41]** 1/6 1/23 4/11 5/22 6/3 6/12 6/19 7/15 13/3 16/13 19/9 22/13 24/8 25/1 25/17 26/3 30/23 31/11 31/25 32/3 32/13 32/20 33/4 34/5 34/8 35/5 36/3 36/7 36/14 36/21 37/11 39/3 39/22 40/18 42/2 42/16 43/23 44/1 44/3 44/8 47/9
**Nformangum's [3]** 33/23

38/4 38/12
**nice [1]** 28/9
**no [53]** 1/4 5/3 9/4 10/8 11/5 11/12 11/14 12/15 12/15 12/25 14/2 15/11 17/3 17/12 17/17 17/23 17/25 18/9 25/6 25/14 25/16 25/20 26/4 27/24 28/1 28/4 29/1 30/13 30/16 31/16 31/16 31/16 33/6 36/5 36/17 37/19 39/3 39/5 39/6 39/7 39/12 40/6 40/7 40/14 40/15 42/19 42/24 48/2 49/2 49/20 50/4 51/16 52/17
**No. [5]** 4/22 26/19 27/8 27/16 38/1
**No. 10 [1]** 27/8
**No. 2 [1]** 26/19
**No. 3 [1]** 38/1
**No. 6 [1]** 4/22
**No. 8 [1]** 27/16
**nobody [3]** 11/11 11/13 16/18
**noon [3]** 8/6 11/3 30/18
**normally [1]** 26/23
**not [59]**
**not -- it's [1]** 49/17
**note [1]** 31/7
**notes [1]** 37/7
**notified [1]** 29/21
**November [1]** 53/5
**now [9]** 6/25 10/6 10/16 10/24 14/7 20/15 30/22 47/2 49/22
**number [5]** 22/13 22/14 22/16 41/21 41/22
**numbers [1]** 27/13

## O

**o'clock [2]** 51/23 51/24
**o0o [1]** 53/1
**object [4]** 23/14 36/22 37/12 38/18
**objection [3]** 5/2 18/9 36/24
**obtained [1]** 38/4

## O

**obviously [2]** 45/25 50/8
**occurred [1]** 19/16
**OCTOBER [2]** 1/9 3/3
**off [3]** 21/9 22/12 34/17
**offer [2]** 52/3 52/4
**office [7]** 1/12 14/14 19/24 23/2 23/3 24/19 29/22
**officer [13]** 9/16 9/25 10/3 11/5 14/1 14/3 15/10 17/1 17/12 24/18 24/20 25/3 31/4
**officers [2]** 14/18 19/19
**official [2]** 2/3 48/13
**often [1]** 34/15
**Oh [4]** 20/13 24/15 32/9 33/24
**once [3]** 22/19 22/21 22/23
**one [27]** 4/22 5/15 12/1 12/18 12/25 16/10 17/4 17/12 21/12 21/19 23/12 36/3 37/10 37/10 37/14 41/8 41/10 41/20 41/21 43/11 45/24 46/1 46/18 47/18 48/5 48/16 52/15
**one -- and [1]** 48/16
**ones [1]** 46/2
**only [9]** 40/22 42/5 43/20 44/3 47/13 47/17 48/10 48/10 48/11
**only -- the [1]** 48/10
**open [2]** 22/9 31/14
**operations [2]** 22/1 22/2
**oral [1]** 41/20
**order [2]** 18/6 43/1
**original [1]** 38/7
**other [11]** 9/20 11/16 19/19 22/19 22/21 37/2 41/9 45/24 48/2 49/2 52/10
**otherwise [1]** 17/13
**our [7]** 5/18 6/13 32/5 41/18 43/22 44/7 45/16
**out [19]** 4/22 8/2 8/8 18/6 21/4 22/24 25/1 28/12 30/25 31/21 37/8 37/15 42/23 47/1 47/17 48/5 48/9 48/22 49/7
**outlined [2]** 40/5 40/5
**outlined -- outlined [1]** 40/5
**outside [2]** 8/8 8/11
**over [9]** 36/7 40/10 40/12 40/20 40/24 43/18 45/12 45/13 50/24
**overbroad [1]** 49/17
**overlap [1]** 45/25
**overlapping [1]** 45/25
**overlooking [1]** 8/2
**own [1]** 41/18

## P

**p.m [6]** 7/17 7/22 7/23 11/2 20/9 52/25
**pad [1]** 12/7
**page [2]** 3/3 24/5
**part [1]** 29/8
**particular [3]** 44/6 48/9 49/16
**parties [2]** 4/23 46/19
**party [1]** 21/8
**Party's [1]** 21/7
**pass [3]** 28/6 45/2 48/8
**passed [2]** 47/19 52/4
**password [6]** 16/1 16/3 16/5 34/4 38/11 44/12
**Paul [1]** 48/6
**people [1]** 14/12
**percent [1]** 47/10
**perfectly [1]** 45/25
**performed [1]** 24/17
**perhaps [1]** 33/18
**period [1]** 14/21
**permission [4]** 12/22 20/17 38/11 41/6
**permitted [1]** 47/13
**person [2]** 34/17 34/17
**person -- well [1]** 34/17
**phone [17]** 15/22 15/23 15/24 22/13 22/16 27/2 30/7 33/5 33/16 33/19 33/20 33/23 34/5 38/4 38/12 38/13 44/12
**pick [1]** 50/21
**place [5]** 30/21 30/22 31/11 32/14 43/20
**PLAINTIFF [1]** 1/11
**platform [1]** 21/7
**play [1]** 40/16
**playing [2]** 23/13 29/24
**plea [2]** 52/3 52/4
**please [11]** 4/10 5/25 6/7 6/16 7/16 15/7 15/19 17/5 18/10 18/12 18/20
**point [13]** 6/22 9/8 10/22 23/19 25/6 29/23 31/16 32/20 37/10 47/1 47/17 48/5 48/22
**pointed [1]** 49/7
**police [8]** 8/3 8/15 11/5 15/25 22/3 22/5 22/10 43/6
**political [2]** 47/12 48/12
**political-type [1]** 47/12
**portions [1]** 26/20
**position [2]** 39/17 48/1
**possible [1]** 29/6
**possibly [2]** 36/1 37/25
**potentially [1]** 31/24
**preadmitting [1]** 4/20
**preliminary [3]** 39/20 42/18 44/25
**present [4]** 1/21 4/2 36/20 39/13
**presented [1]** 45/22
**pretrial [2]** 51/18 51/22
**pretty [4]** 7/3 43/17 46/12 47/12
**previously [1]** 52/2
**prior [13]** 12/12 13/11 17/9 29/9 29/15 32/3 32/24 34/9 34/24 35/17 36/14 40/6 46/20
**probably [1]** 4/18
**procedure [3]** 41/9 41/10 43/22
**procedures [2]** 28/17 32/8

## P

**proceeded [1]** 26/14
**proceeding [4]** 6/7 42/18
45/3 45/7
**proceedings [6]** 1/25 3/17
42/3 45/12 52/25 53/3
**process [4]** 10/25 11/15
33/18 50/12
**produced [1]** 1/25
**proper [1]** 47/3
**properly [1]** 50/9
**property [2]** 33/8 33/20
**prosecution [1]** 44/24
**prosecutor [1]** 16/16
**protect [1]** 42/8
**protecting [1]** 41/11
**protections [4]** 41/25 42/1
42/20 43/21
**provide [2]** 15/22 16/3
**provided [1]** 42/9
**provides [1]** 46/24
**provisions [1]** 41/8
**public [3]** 21/15 21/15
21/16
**pulled [1]** 4/22
**purpose [1]** 17/13
**purposes [2]** 5/21 10/24
**pursue [1]** 31/24
**put [3]** 27/12 40/17 49/11

## Q

**question [11]** 9/15 9/21
15/1 15/6 16/10 16/18 17/4
17/25 33/12 37/20 48/2
**questioned [1]** 16/18
**questioning [1]** 37/13
**questions [11]** 11/6 14/23
15/3 17/3 36/14 37/25 38/20
39/6 39/7 49/2 50/9
**quickly [1]** 43/17
**quite [1]** 23/5
**quotation [1]** 42/25

## R

**RAB [2]** 48/6 48/13
**Rafael [1]** 21/5
**raise [4]** 5/24 6/1 18/10 47/4
**raised [1]** 47/2
**read [35]** 9/3 9/4 10/7 11/13
12/15 13/7 13/9 13/9 13/11
14/21 15/4 15/9 15/13 16/22
21/6 24/22 26/14 26/24
34/21 35/23 36/6 39/19 40/7
41/16 41/23 41/24 42/7
42/16 42/17 42/24 44/1
45/19 46/15 47/5 48/19
**reading [8]** 12/13 21/4 21/9
21/14 21/19 26/22 27/22
44/21
**reads [1]** 43/7
**realize [1]** 41/3
**realized [1]** 13/10
**really [3]** 29/24 31/19 32/2
**reason [6]** 15/4 29/8 31/10
37/20 37/23 41/25
**reasonable [1]** 34/19
**reasonably [1]** 43/3
**recall [8]** 7/3 7/5 9/14 9/15
12/12 13/4 14/12 20/8
**receive [1]** 12/11
**received [2]** 9/17 19/22
**receives [1]** 47/11
**reckless [1]** 49/11
**record [5]** 18/20 26/10
26/12 52/2 53/3
**recorded [4]** 1/25 16/24
20/8 41/22
**recording [1]** 41/23
**REDIRECT [1]** 17/7
**refer [2]** 31/7 39/19
**referred [1]** 41/12
**referring [1]** 10/9
**reflect [2]** 26/10 26/12
**regulates [1]** 48/11
**regulations [2]** 17/25 18/1
**rejected [1]** 52/3
**related [4]** 22/11 28/17

46/18 47/13
**relationship [1]** 6/13
**relayed [1]** 38/17
**relevance [4]** 23/14 36/22
37/12 38/18
**remain [3]** 10/12 27/25 42/9
**reported [2]** 21/23 21/25
**REPORTER [3]** 2/2 2/3
53/6
**Republican [2]** 21/6 21/9
**request [2]** 17/10 17/12
**requested [2]** 12/4 35/24
**require [2]** 46/5 50/12
**required [3]** 34/21 41/13
45/11
**requirement [2]** 46/22
48/20
**requirements [2]** 41/21
50/1
**requires [1]** 43/3
**resident [1]** 28/13
**resides [1]** 22/25
**resolved [2]** 8/3 49/14
**respect [1]** 39/16
**respond [1]** 44/15
**response [4]** 40/5 40/17
45/17 47/6
**responses [1]** 46/5
**rest [1]** 39/10
**restricting [1]** 49/8
**retrieved [1]** 21/24
**reviewed [2]** 19/19 34/24
**reviews [2]** 35/1 38/2
**RICHARD [1]** 1/12
**Richmond [1]** 6/21
**Rick [2]** 4/7 16/15
**rid [1]** 45/10
**ride [1]** 9/25
**riding [1]** 9/2
**right [103]**
**rights [52]** 9/3 9/4 9/5 10/7
10/9 10/9 11/13 12/13 12/15
12/16 13/7 13/10 13/11
13/15 13/19 13/21 14/17

## R

**rights... [35]** 14/21 15/5
15/9 15/13 16/22 17/1 21/8
24/22 26/14 26/22 26/25
27/16 27/18 27/22 34/22
35/9 35/10 35/12 35/16
35/23 40/7 41/12 41/17 42/5
42/11 43/8 43/10 43/14 44/1
44/9 44/18 44/21 44/23
45/19 45/23
**RMR [1]** 2/2
**rode [1]** 8/23
**Roger [1]** 24/18
**role [1]** 25/9
**room [4]** 8/1 26/1 36/15
36/16
**ROSENTHAL [1]** 1/8
**rule [3]** 41/19 45/12 49/23
**running [1]** 22/16
**Rusk [1]** 2/3

## S

**safekeeping [1]** 33/21
**said [11]** 9/17 20/3 20/22
21/3 22/12 24/24 24/24
32/23 36/6 42/4 45/11
**same [1]** 43/10
**sat [4]** 11/9 11/22 11/24
12/4
**satisfy [1]** 49/18
**saw [4]** 8/2 11/5 12/16 13/4
**say [11]** 10/9 13/16 21/14
21/18 29/11 31/23 38/22
43/8 43/9 47/10 48/24
**says [5]** 21/6 21/9 24/5
47/23 51/13
**schedule [1]** 50/17
**search [6]** 27/2 27/14 38/3
38/11 38/13 44/11
**searched [2]** 33/16 33/25
**seated [3]** 4/6 26/7 26/8
**Section [1]** 47/15
**Section 115 [1]** 47/15
**see [13]** 4/24 14/17 17/10
17/12 21/12 26/5 28/9 31/15
31/15 43/24 50/8 50/13
50/20
**seeking [1]** 52/12
**seems [1]** 34/19
**seen [4]** 25/19 47/22 48/3
48/14
**seized [1]** 33/17
**selection [2]** 51/23 52/8
**senator [6]** 19/15 19/23
21/4 21/24 22/25 38/17
**senator's [1]** 22/1
**sent [1]** 51/7
**sentence [1]** 21/18
**separate [1]** 45/6
**setting [1]** 44/23
**shackled [1]** 11/20
**she [2]** 21/25 51/9
**she's [1]** 51/8
**sheriff [4]** 33/7 33/9 33/13
33/14
**Sheriff's [5]** 8/17 14/14
23/1 23/3 24/19
**sheriffs [1]** 33/17
**shirt [1]** 26/9
**short [1]** 12/5
**shot [1]** 21/19
**should [6]** 5/10 21/10 39/17
45/21 50/2 51/24
**show [3]** 12/21 13/2 38/1
**showed [2]** 23/13 25/25
**shown [1]** 13/3
**sic [3]** 9/18 24/18 33/17
**sign [1]** 12/8
**signature [2]** 27/20 53/6
**signed [9]** 13/5 13/8 13/14
13/18 14/17 21/9 27/14 35/5
42/10
**signing [2]** 12/12 13/12
**silent [3]** 10/12 27/25 42/9
**similar [1]** 40/11
**simply [1]** 48/17
**singled [1]** 48/9
**sir [7]** 7/17 7/18 17/18
**sister's [1]** 8/1
**sit [1]** 49/2
**sits [1]** 43/23
**Sixth [16]** 39/25 40/3 40/9
40/23 42/5 42/13 43/10
43/14 44/8 44/17 44/19
44/23 44/23 45/4 45/14
45/18
**skull [1]** 21/11
**slower [1]** 26/23
**slowly [1]** 36/8
**smashing [1]** 21/11
**social [2]** 23/7 23/8
**some [14]** 10/22 21/16
23/19 25/11 30/15 31/14
35/4 36/16 36/20 42/12
42/14 43/3 46/1 47/12
**somebody [1]** 29/5
**someone [3]** 7/25 41/15
43/16
**something [5]** 37/18 39/19
44/21 46/13 48/13
**sometime [2]** 11/1 11/24
**sometimes [1]** 40/11
**sons [1]** 36/11
**soon [1]** 29/5
**sooner [1]** 29/3
**sorry [5]** 13/16 24/7 28/23
36/7 51/18
**sort [4]** 30/3 31/22 35/4
36/20
**sound [1]** 34/13
**Source [1]** 22/9
**SOUTHERN [2]** 1/1 20/1
**sovereign [1]** 45/16
**sovereigns [1]** 45/6
**sovereignty [1]** 40/12
**space [2]** 21/15 46/2
**speak [5]** 7/18 18/13 24/20
26/25 28/2
**speaking [2]** 29/4 29/14
**special [8]** 14/13 17/19 22/1
22/2 28/9 42/20 43/16 43/21

## S

**specific [2]** 40/4 50/6
**specifically [8]** 9/16 9/21 41/12 41/16 42/7 46/21 48/19 48/23
**speech [5]** 47/12 48/9 48/12 48/12 49/8
**speed [1]** 23/15
**spoke [5]** 11/11 14/20 17/1 26/3 31/4
**spoken [2]** 19/19 25/22
**St. [1]** 48/6
**St. Paul [1]** 48/6
**staff [2]** 19/23 21/24
**Stamped [1]** 24/5
**stance [1]** 41/11
**stand [4]** 5/24 5/25 12/1 18/12
**Starts [1]** 21/4
**state [20]** 4/5 6/18 14/10 17/10 18/20 23/19 24/2 24/10 25/12 31/3 32/8 34/14 40/1 40/4 40/11 40/13 43/11 45/12 45/24 50/5
**state-level [1]** 34/14
**stated [2]** 16/18 39/23
**statement [8]** 9/22 15/10 15/12 41/20 41/22 43/3 44/10 44/11
**statements [1]** 41/19
**STATES [7]** 1/1 1/4 1/9 1/12 19/3 22/3 32/6
**statute [6]** 47/19 48/7 48/10 48/15 50/11 52/19
**statutes [3]** 47/2 49/8 49/19
**statutory [2]** 41/8 48/23
**stenography [1]** 1/25
**step [3]** 17/18 39/8 49/9
**steps [4]** 22/19 22/21 31/17 31/22
**still [1]** 13/25
**Stop [1]** 27/23
**strange [1]** 44/5
**strong [1]** 41/11

**stuff [1]** 30/5
**style [1]** 37/24
**subjective [2]** 46/21 49/11
**subpoena [1]** 17/22
**subsequent [1]** 44/10
**sufficient [2]** 46/4 51/4
**suggesting [1]** 51/10
**Suite [4]** 1/13 1/16 1/19 2/3
**summary [2]** 21/2 40/17
**Sunday [4]** 19/16 20/5 20/11 30/9
**supervisor [2]** 19/12 29/21
**suppress [3]** 4/14 39/17 46/3
**suppressed [2]** 44/10 44/12
**suppression [4]** 1/8 3/2 45/20 46/6
**Supreme [4]** 42/13 43/1 44/18 49/7
**sure [11]** 12/10 26/24 31/8 31/12 33/22 36/12 41/19 46/17 47/10 49/25 52/20
**surprised [2]** 14/16 14/17
**surveillance [1]** 23/6
**suspect [5]** 28/20 29/2 29/9 29/15 41/16
**suspects [1]** 28/17
**sustain [1]** 36/24
**sworn [5]** 5/24 6/2 6/3 18/11 18/17

## T

**take [16]** 5/25 18/6 18/12 22/19 22/22 24/25 26/22 30/22 31/11 32/7 32/11 37/2 43/20 48/1 50/18 51/24
**taken [8]** 10/2 24/13 24/14 24/15 34/8 34/17 37/8 48/2
**takes [1]** 41/11
**taking [1]** 31/16
**talk [3]** 36/16 50/14 50/17
**talked [5]** 14/20 16/19 25/19 25/24 31/5
**talking [2]** 30/24 31/21
**task [2]** 24/18 31/4

**tell [6]** 6/16 8/11 9/24 27/22 34/19 41/14
**telling [1]** 25/13
**tells [2]** 43/1 43/17
**ten [1]** 32/11
**term [1]** 36/19
**terroristic [2]** 23/23 40/2
**testified [3]** 6/3 18/17 40/18
**testify [1]** 5/22
**testimony [3]** 47/3 49/22 50/23
**TEXAS [25]** 1/1 1/13 1/17 1/20 2/4 6/21 19/25 20/1 21/6 28/12 28/13 34/14 34/16 34/21 41/5 41/9 41/10 41/11 41/14 43/11 43/13 43/20 45/2 45/4 52/19
**Texas City [1]** 28/13
**than [5]** 26/23 41/4 41/4 43/19 50/20
**Thank [19]** 5/12 6/10 7/21 12/24 15/2 15/15 17/14 17/18 18/16 23/17 26/12 39/8 41/1 44/13 49/4 52/9 52/15 52/22 52/23
**that [264]**
**that -- that [1]** 9/2
**that's [34]** 4/20 5/20 16/8 17/15 18/2 18/7 23/21 27/20 28/20 30/8 30/9 31/25 32/12 32/22 34/23 35/17 37/4 37/10 39/1 39/5 39/19 39/24 39/25 40/12 40/16 41/13 43/15 45/13 45/15 46/13 51/4 51/4 51/13 51/17
**that's -- and [1]** 45/15
**That's -- I [1]** 51/4
**their [10]** 5/11 12/7 14/23 23/1 25/15 34/18 41/17 47/6 49/23 49/23
**theirs [1]** 5/3
**them [11]** 9/2 9/7 15/22 16/3 25/13 29/9 32/6 32/7 37/2 42/10 52/17

**T**

**then [19]** 4/5 5/1 5/5 5/17 7/1 14/23 22/2 22/14 29/20 29/23 30/20 31/5 31/16 42/4 42/6 42/25 47/11 49/24 49/24

**there -- okay [1]** 31/2

**there -- was [1]** 20/6

**there's [13]** 17/25 21/16 25/6 27/16 27/16 31/16 35/8 35/9 40/15 42/14 42/19 49/2 49/8

**therefore [2]** 45/5 45/20

**these [17]** 5/13 12/16 14/12 14/17 14/17 15/5 15/9 15/13 17/10 26/22 27/22 40/17 41/25 42/10 43/21 47/10 52/17

**these -- no [1]** 52/17

**they [48]** 9/8 9/17 9/17 14/10 14/20 14/20 14/21 15/22 15/24 16/1 18/2 18/3 22/6 22/6 22/8 22/10 22/13 22/13 22/14 22/19 22/19 22/21 22/22 22/23 22/23 22/25 23/5 23/7 23/8 23/10 23/10 30/17 30/17 32/11 32/11 32/12 33/8 35/12 38/20 39/19 41/15 42/25 43/13 44/18 45/5 45/25 48/24 49/18

**they're [4]** 5/4 29/5 41/15 43/17

**thing [5]** 10/13 30/3 31/22 46/18 48/5

**things [5]** 22/9 23/15 37/10 47/10 47/17

**think [28]** 5/8 13/14 13/18 16/15 30/14 33/1 33/18 35/8 35/8 37/1 37/25 41/12 43/11 44/17 45/16 46/18 46/23 48/13 48/16 49/13 49/16 49/19 50/1 50/23 51/4 51/6 51/8 51/15

**this [85]**

**This -- what's [1]** 41/12

**this -- yeah [1]** 26/21

**those [10]** 4/22 5/2 9/6 9/9 10/24 13/10 13/11 13/21 41/24 52/12

**though [2]** 6/12 40/10

**thought [1]** 51/11

**threat [20]** 19/15 19/22 20/3 20/8 20/12 20/22 20/25 21/3 21/23 22/6 22/7 22/7 23/23 38/17 39/4 47/8 47/11 49/9 49/18 50/11

**threatening [1]** 22/11

**threats [5]** 40/2 47/16 47/17 48/11 49/10

**three [2]** 51/3 51/6

**through [6]** 22/16 22/17 38/16 39/2 49/14 50/12

**Thursday [1]** 14/6

**time [32]** 1/6 7/12 9/2 10/21 12/16 13/5 13/11 13/14 13/18 13/25 14/3 14/21 15/12 15/21 24/12 25/23 26/22 28/21 28/23 29/16 30/25 33/19 37/7 39/22 40/22 42/17 43/11 44/1 47/4 49/15 49/21 50/1

**timeline [2]** 28/19 30/6

**timing [1]** 46/5

**today [6]** 26/5 34/25 46/7 46/9 46/14 51/8

**told [10]** 12/8 12/8 19/14 19/15 19/17 19/18 25/3 29/22 38/24 42/2

**too [1]** 52/18

**took [4]** 24/17 30/20 32/14 49/9

**took -- performed [1]** 24/17

**top [1]** 35/9

**trailing [1]** 21/15

**trained [1]** 29/4

**transcript [3]** 1/25 26/18 53/2

**transcription [2]** 20/24 37/4

**transported [2]** 8/19 8/20

**transporting [1]** 9/12

**trial [4]** 46/20 50/17 51/23 52/8

**tried [1]** 50/8

**triggered [1]** 44/24

**troubling [1]** 45/23

**true [4]** 47/16 48/11 49/8 49/18

**try [3]** 22/6 29/4 50/18

**trying [4]** 7/25 30/1 30/5 38/9

**Tuesday [2]** 19/18 30/19

**turn [3]** 8/4 20/24 24/1

**turns [1]** 22/24

**Twenty [2]** 18/25 29/13

**twice [1]** 13/9

**two [9]** 31/23 32/3 36/11 41/8 41/22 42/25 50/19 50/20 51/3

**type [5]** 22/10 47/12 48/7 48/9 48/11

**U**

**U.S [2]** 29/22 31/21

**U.S. [4]** 8/13 8/20 8/23 9/1

**U.S. Marshal [2]** 8/23 9/1

**U.S. Marshals [2]** 8/13 8/20

**U.S.C [1]** 47/15

**Uh [4]** 9/10 10/14 33/3 48/21

**Uh-huh [4]** 9/10 10/14 33/3 48/21

**unclear [1]** 47/8

**unconstitutional [2]** 47/15 49/20

**under [12]** 39/21 40/10 41/15 41/18 41/23 43/25 44/2 45/23 45/24 46/23 47/14 49/10

**understanding [3]** 12/8 32/25 38/10

**understood [2]** 6/15 36/12

**UNITED [7]** 1/1 1/4 1/9

**U**

**UNITED... [4]** 1/12 19/3 22/3 32/6

**United States [3]** 19/3 22/3 32/6

**unless [3]** 18/2 48/8 52/20

**until [6]** 11/6 11/6 16/19 25/4 31/11 32/8

**unusual [2]** 32/4 46/2

**up [8]** 4/4 5/24 8/3 16/17 25/4 29/24 35/8 42/2

**upheld [1]** 49/8

**upon [1]** 4/23

**us [11]** 6/16 8/11 9/24 11/18 38/24 43/1 43/17 46/24 50/12 51/7 51/17

**use [1]** 4/10

**used [1]** 35/17

**user [1]** 22/14

**usual [1]** 43/15

**usually [3]** 29/1 32/5 43/16

**V**

**vague [1]** 49/17

**validity [2]** 22/7 39/4

**various [1]** 22/17

**versus [3]** 42/21 43/25 48/6

**very [8]** 5/10 21/15 34/15 45/22 48/5 48/7 52/7 52/22

**video [3]** 16/24 23/13 26/16

**videos [1]** 23/12

**violations [2]** 25/10 25/11

**visit [2]** 17/9 25/17

**visited [1]** 35/5

**voicemail [3]** 19/16 20/6 22/11

**voluntarily [1]** 27/14

**Voter [1]** 21/8

**VS [1]** 1/5

**W**

**waist [1]** 11/20

**wait [1]** 29/1

**waive [1]** 26/25

**waived [1]** 17/1

**wallet [1]** 33/20

**want [24]** 4/17 6/16 6/25 7/7 13/2 18/4 18/6 27/23 28/16 29/8 33/22 38/1 38/3 39/13 42/4 43/8 43/9 44/7 44/14 46/16 52/1 52/17 52/19 52/20

**wanted [1]** 36/12

**warning [2]** 41/13 44/6

**warnings [5]** 41/24 42/8 42/10 42/24 46/4

**warrants [1]** 49/21

**was -- we -- it [1]** 31/13

**was -- yes [1]** 9/15

**Washington [1]** 22/4

**wasn't [4]** 31/12 31/13 38/9 40/14

**watch [1]** 33/20

**way [1]** 36/16

**we [47]** 4/19 5/6 11/18 11/19 11/19 11/21 11/21 11/22 11/22 11/24 11/24 11/25 12/1 12/2 12/2 17/19 23/14 25/25 28/18 31/12 31/13 32/6 32/7 39/10 41/18 42/5 42/8 43/25 45/3 45/6 46/7 46/8 46/9 46/11 47/2 47/14 47/16 48/4 48/13 49/19 49/24 50/8 50/14 51/22 52/2 52/6 52/6

**we'd [2]** 5/18 50/23

**we'll [3]** 49/2 49/14 49/25

**we're [11]** 4/13 5/22 6/13 30/5 33/22 47/11 48/24 50/24 50/24 51/1 52/8

**we've [7]** 4/19 5/5 43/21 47/1 47/9 50/21 52/7

**wearing [2]** 26/7 26/8

**Wednesday [2]** 11/1 14/6

**week [2]** 20/4 51/8

**weird [2]** 43/22 44/5

**well [18]** 4/18 7/1 7/3 10/3 10/21 17/24 18/13 21/24 22/12 23/12 25/10 34/17

43/9 43/15 44/12 45/22 47/8 49/3

**well-presented [1]** 45/22

**went [6]** 8/1 8/8 26/23 33/4 36/7 49/11

**were [59]**

**were -- I -- did [1]** 13/7

**were -- were [1]** 8/12

**were -- yes [1]** 11/21

**weren't [1]** 32/2

**WESLEY [1]** 1/12

**What -- what -- tell [1]** 9/24

**what's [3]** 31/15 31/20 41/12

**whatever [3]** 10/4 42/19 44/7

**whenever [6]** 32/12 33/4 35/20 42/9 43/7 43/13

**where -- who [1]** 19/22

**wherein [1]** 10/2

**wherever [1]** 32/6

**whether [4]** 12/2 24/22 38/16 49/22

**which [23]** 5/6 12/7 19/24 21/16 23/24 25/10 25/10 30/11 30/19 33/16 35/10 39/23 40/19 40/23 40/24 42/8 42/25 45/11 46/12 46/21 47/13 48/12 49/18

**which -- which [1]** 25/10

**while [1]** 12/5

**who [11]** 7/24 8/19 10/24 12/7 14/15 19/22 21/23 22/7 24/17 27/10 38/24

**who's [1]** 29/15

**whole [2]** 6/13 48/3

**why [2]** 7/14 36/10

**will [8]** 6/9 10/4 26/7 26/12 49/23 50/8 50/9 50/10

**Williams [3]** 24/18 24/20 24/20

**Williamson [2]** 25/3 31/5

**window [2]** 8/1 8/9

## W

**withdrawn [1]**  52/11
**within [3]**  34/18 41/14 46/2
**witness [15]**  3/11 3/14 5/25
6/2 12/20 12/23 17/16 18/11
18/12 20/16 20/18 26/11
28/6 35/1 38/2
**witnesses [2]**  39/11 39/12
**words [1]**  50/6
**work [5]**  12/9 12/9 12/10
28/12 41/4
**worked [2]**  14/15 34/14
**working [1]**  30/14
**works [1]**  10/24
**would [36]**  7/18 10/7 12/2
12/2 12/9 12/9 12/10 18/2
18/13 18/13 18/20 25/4 29/8
29/11 33/1 33/10 33/20
34/19 35/24 36/1 37/1 40/4
40/15 40/20 42/4 42/12 45/3
45/4 46/20 47/1 47/3 47/17
48/5 48/22 49/10 50/23
**wouldn't [1]**  42/5
**written [4]**  27/6 27/7 27/13
45/17

## Y

**yeah [4]**  19/6 23/5 26/21
34/3
**year [1]**  21/7
**years [3]**  6/17 18/25 29/13
**Yep [1]**  30/10
**yes [122]**
**Yes, [2]**  9/7 10/18
**Yes, I [2]**  9/7 10/18
**Yolonda [2]**  1/22 4/8
**you [273]**
**you -- had [1]**  25/19
**you -- have [1]**  34/24
**you -- I [1]**  19/13
**you -- or [1]**  13/11
**you -- that [1]**  13/5
**you -- this [1]**  13/2
**you -- well [1]**  10/21

**you're [3]**  28/14 30/14 48/1
**you've [2]**  9/5 41/3
**your [88]**
**Your Honor [39]**  4/3 4/7
4/15 5/3 5/7 5/14 7/20 17/3
17/17 17/21 18/1 18/5 18/7
18/16 26/10 28/6 38/19 39/6
39/7 39/10 39/12 39/14 40/5
40/13 40/17 40/25 43/12
44/16 46/17 47/1 47/21 49/6
50/1 50/4 51/5 51/7 51/21
52/11 52/23
**YouTube [3]**  23/9 23/10
23/12